NELSON LAYLIN v. DAVID M. KNOX, ANN M. KNOX, HENRY STRINGHAM AND HARVEY FELTON.

*Discharge of mortgage on partnership property by the partner not properly liable—Equity of indemnity—Limitation of recovery on excessive mortgage.*

Where property owned by two partners is subject to a mortgage, and as between the two it is the duty of one to discharge it, and the other pays the debt on condition that the mortgage shall inure to his benefit, an equity arises in his favor entitling him to indemnity through the mortgage.

In the foreclosure of a mortgage drawn for a larger amount than the debt it secures, recovery should be confined to the correct sum.

Appeal from Ingham. Submitted April 23. Decided June 4.

FORECLOSURE. Complainant appeals.

*M. D. Chatterton* and *M. V. Montgomery* for complainant.

*Benton Hanchett* for defendants. When a debt is discharged, the mortgage securing it is no longer valid, *Tucker v. Alger,* 30 Mich., 67; *Caruthers v. Humphrey,* 12 Mich., 278; *Kortright v. Cady,* 21 N. Y., 347, 366; *Hubbell v. Blakeslee,* 15 N. Y., 603; *Lane v. Shears,* 1 Wend., 434; *Bonham v. Galloway,* 13 Ill., 68; *Mead v. York,* 6 N. Y., 452: the assignment of a mortgage apart from the debt it secures extinguishes it, *Bailey v. Gould,* Walk. Ch., 484; *Langdon v. Buell,* 9 Wend., 83; *Aymar v. Bill,* 5 Johns. Ch., 570; *Merritt v. Bartholick,* 36 N. Y., 44; *Webb v. Flanders,* 32 Me., 175; *Jackson v. Bronson,* 19 Johns., 325; *Carpenter v. Longan,* 16 Wall., 274; *Briggs v. Hannawold,* 35 Mich., 474; 1 Jones on Mortgages, § 805; 2 id., §§ 1376-7; if one who is interested in a debt to be paid or property mortgaged to secure it, pays the debt, he becomes subrogated to all the rights which the creditor who is paid has in the security, id., § 874; the assignee of a mortgage cannot foreclose the mortgage if his assignor could not, *McCabe v. Farnsworth,* 27 Mich., 63; *Warner v. Whittaker,* 6 Mich., 133; *Wurcherer v. Hewitt,* 10 Mich., 453; *Colman v. Post,* 10 Mich., 422; *Hubbard v. Winsor,* 15 Mich., 146; *Ford v. Loomis,* 33 Mich., 121.

GRAVES, J. This case was brought to foreclose a mortgage on the east half of the northwest quarter of section thirty-three in township four north of range one west. The bill was filed July 16, 1877, against Knox and wife as mortgagors and Stringham and Felton as subsequent purchasers or incumbrancers, and it stated that the mortgage was given February 3d, 1868, to C. & J. Cooper of Ohio for $899, with interest at ten per cent., and was recorded July 7th, 1869; that May 2d, 1877, the Coopers assigned it to Richard Elliott by whom it was assigned to complainant the 12th of June thereafter.

October 9th, 1877, Knox and wife answered and denied executing the mortgage, and denied that any considera-

tion existed for it, and alleged that it was forged or[1] fraudulent.

It being ascertained that Stringham received conveyance of part of the premises by the description of the northeast quarter of the northwest quarter of section thirty-three, in township four north, of range one west, and that the deed was made and recorded before the record of the mortgage, and that he claimed to be a purchaser in good faith and without notice, it was stipulated that the bill should be dismissed as against him, but without prejudice to the case against the other defendants, and it was dismissed accordingly.

As to the remaining defendants the court dismissed the bill on the merits and complainant appealed.

The only difficulty in the case is in ascertaining what is the truth respecting one or two matters of fact. Concerning these there are contradictory depositions and testimony to affect credit. With this exception the evidence, on the merits of which there is considerable, is not very discordant.

The conflict begins at the transaction to which this mortgage is referred, and is then direct and positive. It cannot be harmonized. The surrounding circumstances as they favor the version of one side or the other deserve much consideration, and the result must depend on the impression felt as to the weight of evidence.

In the opinion of the court the mortgage must be considered genuine. The direct and circumstantial evidence in favor of that conclusion is conceived to be much stronger than the contrary showing. This ground of defense must therefore be overruled.

The objection that the mortgage is a fraudulent device and destitute of consideration requires more attention. A reference to several facts is essential for explanation.

November 3d, 1866, Knox and wife mortgaged to the Coopers certain saw-mill property in Bath for $2,626.66,

payable according to three notes for the same debt as follows: $1,016.66 in sixty days; $785 in eight months, and $825 in one year.

This debt was the purchase price of the engine and machinery for the mill, the same having been furnished by the Coopers. The entire property appears to have been valued at from $4,500 to $5,000, and Richard Elliott was in fact owner of an equal undivided half and was engaged with Knox in business, but the title seems to have stood in the name of Knox.

The first two payments were satisfied, and the third only, that for $825, due November 3d, 1867, remained unpaid. This was the debt of Knox, and although Elliott was interested in having it paid, it was not for him to pay. On the contrary, his situation appears to have been such as to entitle him to require Knox to discharge it, or at least to protect his (Elliott's) interest against it.

Some time about January, 1868, a negotiation sprang up between William N. Lewis on the one hand, and Knox and Elliott on the other, for the sale of the mill property to Lewis in exchange for the farm described in the mortgage in suit.

Elliott was anxious there should be a trade, but was unwilling to hold a share of the farm as the equivalent for his interest in the mill property, and it was finally arranged that in case the trade with Lewis was brought about, the farm should be taken by Knox, and that he should secure Elliott by mortgage upon it for his share of the mill property, being $2,250.

Lewis insisted that the Cooper mortgage, which the record represented as not paid, should be removed from the mill property, and Knox and Elliott caused him to be satisfied either that it was already out of the way, or should be.

Thereupon Knox and wife, by deed dated February 3d, 1868, conveyed the mill property to Lewis, and he at the same time conveyed to Knox the farm in exchange,

and as part of the same general transaction Knox and wife gave their mortgage of even date on the farm to Elliott for his interest in the mill property,—$2,250.

At this time the law firm of Dart & Wiley, then of Lansing, were attorneys for the Coopers, and had control of the demand represented by the mill property mortgage against Knox.

It will be recollected that the mortgage in suit running to the Coopers for $899 bears the same date as these papers made on the trade with Lewis. Elliott explains its history substantially as follows: He says Knox consulted him concerning the best way to arrange the charge held by the Coopers on the mill property, which consisted of the last payment and some interest. It was important that some suitable provision should be made in order that the trade with Lewis should not be thwarted. Both Knox and Elliott much desired it, but as between them, as before stated, it was the duty of Knox to discharge the debt; that it was finally agreed between them that Knox and wife should execute a mortgage on the farm to the Coopers for the amount supposed to be behind on their debt, and if necessary give it precedence over that to Elliott of the same date, and that Elliott should take it to Dart & Wiley, and by arrangement with them as Cooper's agents, make use of it to shift the debt to the farm and relieve the mill property; that the mortgage was made and dated at the time the other papers were drawn, and placed in his hands pursuant to such arrangement, and that he went to Dart & Wiley with it and requested them to accept it in place of the mill property mortgage; that they refused to make any exchange.

But a few weeks later, namely, March 24, 1868, and whilst the arrangement with Knox continued as at first, he (Elliott) had another interview with Dart & Wiley, and consummated a shift of securities. The transaction was as follows:. The mortgage in suit to the Coopers was recognized as an accepted security transferred by

the Coopers to Elliott, and in its place Elliott executed his own notes and mortgage to the Coopers for the debt, and the remaining note accompanying the mill property mortgage was marked paid by Dart & Wiley, and surrendered to Elliott, who handed it over to Knox. At the same time Dart & Wiley, in furtherance of the agreement with Elliott to give him the benefit of the mortgage in suit, proceeded to draw up and subscribe a written transfer to him, which, however, was subsequently erased under the impression that they were not empowered to give the transfer. The oral arrangement, however, and the papers given by Elliott and the surrender of the old note were not canceled. The debt of Knox represented by the mill property mortgage was removed.

That the Coopers fully recognized and confirmed the arrangement made with their attorneys Dart & Wiley, they prosecuted the securities received from Elliott and collected the whole amount, and in order to carry out the agreement that the mortgage was an accepted security to stand available to Elliott, they formally assigned it to him over their own hands.

Nearly all the circumstances mentioned by Elliott are established beyond controversy.

That he took the mortgage in suit to Dart & Wiley and had with them the interviews spoken of; that he gave and they received his mortgage and notes for what they deemed to be equivalent to the amount still called for by the mortgage on the mill property; that they marked the note representing that amount as then paid in full and delivered it to him; that they wrote and subscribed an assignment to him of the mortgage and then erased it; that they collected from him the amount for which he became responsible; and that the Coopers thereafter formally assigned to him the mortgage in question over their own hands, are facts proved conclusively.

Knox first swears that he never gave the mortgage, and then, as serving to show that there was no cause

for giving it and that the act of Elliott in giving the securities to the Coopers to remove their claim against the mill property, was well explained without aid from the mortgage in suit, proceeds to testify that within two or three days of four or five weeks, or about that time before the trade with Lewis, he gave Elliott the money with which to call on Dart and Wiley and pay the last and remaining installment of the mill property mortgage; that Elliott requested permission to make use of the money and he (Knox) replied that he would not consent unless it could apply on that mortgage; that Elliott answered that he could make some arrangement with Dart & Wiley which would enable him to keep the money; that he (Knox) responded that he might make any arrangement he chose provided the money should be applied, or he (Knox) should be freed from the mortgage; that Elliott took the money on these terms and no other; that he (Knox) took no receipt or writing and could not tell what the amount was, but it was in the "neighborhood of nine or ten hundred dollars;" that he had trouble afterwards in getting an account from Elliott of what had been done, the latter saying he had made arrangements which were satisfactory to them, and that the note was not handed to him until four or five months later.

Mrs. Knox testifies about Elliott's receiving money from her husband to pay the last installment of the mill property mortgage, but her knowledge, so far as she refers to circumstances of intrinsic value as proof, is based on her husband's statements and adds nothing to the force due to his testimony and there are no surrounding circumstances which do so.

Having found the mortgage was not false but genuine, we are compelled to go into the consideration of the present branch of the case upon an assumption that it was brought into existence by Knox and wife and at the very time the mill property was traded to Lewis for the farm, and for some beneficial purpose.

The explanation by Elliott is not unreasonable, and it unfolds a purpose, and one which harmonizes with other established facts and is consistent with the suggestions of business experience.

It accounts for some matters which aside from it would appear improbable, and seems to bring the different events into a coherent series.

On the other hand Knox's version is not only much less probable in itself, but is not consistent with one or more important facts we consider as too firmly established to admit of question.

The weight of evidence is with complainant.

It is not expedient to detail our impressions on the various items. In the opinion of the court the case will not justify technical considerations.

Knox was indebted by mortgage to the Coopers on the mill property, and as between him and Elliott it was his duty to discharge it. He could not ask Elliott to step forward and pay it for him as a gratuitous act, and he did not. Both contemplated that the debt should at last be paid out of the means of Knox, and when Elliott took it on himself on condition that the mortgage in suit should inure to his benefit, the proceeding was in substance at the instance of Knox, and an equity arose against the latter entitling Elliott to ask indemnity through the mortgage.

When the instrument was placed in his hands to be used to relieve the mill property from the charge upon it, no mode was prescribed, and the arrangement with Dart & Wiley was a single transaction of which the appropriation of this mortgage to Elliott was but one element.

It was applied to the purpose it was made for. There was some circuity, but that is not important.

The Coopers ratified the part their agents took.

The branches of the transaction cannot be separately disposed of. There was nothing not warranted by law and equity, and all the parts should abide the fate of

each.. It would not be reasonable if it were practicable that the portion contrived in Elliott's favor, and which is not carried out, should be abrogated, whilst the portion against him and in Knox's favor should remain executed. The remaining consideration is the form of relief.

In drawing the mortgage a larger amount was inserted than the debt, and it is necessary to confine recovery to the correct sum. That will be found by taking the amount of the note November 3d, 1867 ($825), and adding interest from that date at seven per cent. The dismissal as to Stringham cannot be disturbed. As to the other defendants the decree below must be reversed and a foreclosure must be allowed as against the premises described in the mortgage except the description in the deed to Stringham, and complainant will be entitled to a decree against Knox for his costs of both courts.

The other Justices concurred.