OF

# The State of Missouri

AT THE

## OCTOBER TERM, 1878.

*(Continued from Vol. 68.)*

---

### GRIFFITH v. TOWNLEY, *Appellant.*

**Mixed and Mutual Mistake of Law and Fact.** An administrator
sold lands of his intestate, supposing that it was the fee that he was
selling. The purchaser supposed it was the fee that he was buying.
It turned out that nothing passed by the sale but the equity of re-
demption. *Held*, that this was such a case of mixed and mutual
mistake of law and fact as entitled the purchaser to relief in equity.

*Appeal from Osage Circuit Court*—HON. A. J. SEAY, Judge.

*Ewing, Smith & Pope* for appellant.

*Lay & Belch* for respondent.

SHERWOOD, C. J.—In 1864, one Lewis Welton borrowed of Mrs. Peninah Townley, as representative of the estate of her husband, John M. Townley, deceased, $4,600, giving a note therefor, and securing the note by a deed of trust on certain land, K. W. Townley being the trustee. Welton died without having paid any portion of either principal or interest of the note. His estate was administered by one Jesse Welton, in 1866, who came to K. W. Townley, the trustee and agent for his mother, and induced him to have the note allowed against the estate, saying that if he would do this, he, the administrator, would have the court make an order for the sale of the land, when it would bring much more than if sold under the deed of trust alone.

After this claim was allowed, as well as some others of minor importance, the administrator procured an order of sale for the payment of debts as he had promised, and the sale took place; Townley, as the agent for his mother, becoming the purchaser of the land mentioned in the deed of trust, for the sum of $6,000; purchasing on the faith of the public statements and representations of the administrator at the sale, (who acted as auctioneer, and also bid against him, and asked him to bid on the land,) that he would "sell a clear title;" that the land would be free from incumbrance; that he would pay Mrs. Townley's note. McCord, attorney for the estate of Welton, also told Townley, who made inquiries of him at the time of the sale respecting the title, that the title would be all right, and to "go on and purchase."

The testimony is without rebuttal, and conclusive as to these statements of the administrator. There is also uncontradicted testimony to the effect that Welton, just when the land was knocked off, stated "that the land had brought barely enough to pay off the mortgage of Mrs. Townley, and the expenses." There is also similar testimony to the effect that when inquiry was made, immedi-

ately after the land was stricken off, the reply was made, either by Welton, McCord or Townley, that the last named "had got the land to satisfy the mortgage." $6,000 was all the land, in absolute fee, was worth.

There was nothing in the proceedings in any manner referring to the deed of trust.    The order of sale, however, though in usual form in other respects, requires the sale of " all the right, title and interest of the said Lewis Welton," in the land mentioned in the order.    But the petition for the sale, the order of publication, the certificate of appraisement, the report, the order approving it, and the deed, are in the customary form where the land is sold for the payment of ordinary debts, and give not the remotest indication that anything less than the fee was sold, or intended to be sold.    In addition to that, and confirmatory of the indications borne by the probate files and records, one of the county justices stated that some objections were raised to the approval of the report ; that the appraisers were sent for, who " stated that they had appraised the whole value of the land, without reference to the mortgage;" and it was upon this understanding, i. e., that the whole title was appraised and sold, that the county court approved the sale. Upon this approval, and the delivery of the deed, Townley delivered Welton's note, then amounting, with accrued interest, to some $5,040, to the administrator, paid in money the difference between the note and his bid, and acknowledged satisfaction on the record of the deed of trust.

Welton's administrator died, and his administrator, Jacob Hull, administered upon the estate of the deceased administrator, made a settlement of the estate of Lewis Welton, and that estate is now free from debt.    The present proceeding, instituted by the public administrator of Osage county, as administrator de bonis non of Lewis Welton's estate, has for its object the cancellation of the entry of satisfaction on the record, the substitution of the public administrator to the rights formerly possessed by Mrs. Townley as creditor of the estate, and that the deed of

trust be foreclosed. The prayer of the petition was granted, and a decree as prayed for entered, the debt then amounting to over $10,000. We are now asked to give our sanction to this decree; the plaintiff claiming in support of it, that only the *equity of redemption* passed by reason of the probate sale ; that if any mistake has occurred it was a *mistake of law*; a mistake of such a fatal character that equity, with all its beneficent and healing powers, possesses. no ability to redress.

It must be confessed that this position is in accordance with the general and very salutary rule, and the only inquiry to which we must address ourselves, is whether the circumstances of this case are such as will, in the present instance, prevent that rigid rule from having its customary sway. In the *Bank v. Daniel,* 12 Pet. 32, it was said, quoting from *Hunt v. Rousmaniere,* 1 Pet. 15, " whatever exceptions there may be to this rule, they are not only few in number, but they will be found to have something peculiar in their character." The brief limits of an opinion will not admit of detailed examination of the numerous and often conflicting authorities respecting the extent to which courts of equity proceed in relieving against mistakes of law. If, however, the principle to be deduced from· the great current of authority on this vexed question is correctly announced in the case just cited, then the inquiry must be, are there in the present instance such ingredients as entitle it to be placed in the narrow and infrequent list of exceptions to a generally prevalent rule ? We cannot doubt that Townley acted, when making the purchase at the administrator's sale, under the confident belief ·that he was purchasing " *a clear title,*" or title in fee; nor can we doubt that, under this belief, he paid the difference between the amount of the note and the bid, surrendered that note and acknowledged satisfaction of the deed of trust. And it is.equally beyond question that he was led to this course by the promises and assurances of the representative of the estate, Welton, who, doubtless, as evinced by his con-

temporaneous declarations, supposed he was selling the land in fee simple absolute. If this was the belief of both parties, then it follows that if Townley did not by his purchase procure the fee as he intended, and as Welton intended he should, then it is a case of mutual mistake : one of so fundamental a character as appeals very strongly for equitable interposition. If, on the other hand, Welton was actuated by no honest purpose in the course which he pursued, and the representations which he made, then the contract of sale was tainted with such fraud as to utterly vitiate its validity. But whether the contract was the result of mistake or fraud, in either event an unconscionable advantage has been obtained by selling a barren and worthless equity of redemption, which the purchaser did *not* intend to buy, for the full price of a title in fee, which the buyer *did* intend to buy, and which the administrator, if honest, did intend to sell him.

These are circumstances of such peculiar character, as ought, it seems, to go far towards mitigating the rigor of the general rule. In short, this case may be said to rest, as Mr. Justice Story observes of another, (1 Story Eq. Jur., § 118,) upon "mixed considerations" and not exclusively upon mere mistake or ignorance of the law. Where there was a mutual mistake of parties as to the interest of the vendor in the land sold, the court of appeals of Virginia held that the sale should be set aside. *Irick v. Fulton's Extrs.*, 3 Gratt. 193. And this, notwithstanding the whole matter arose from a mutual misconstruction of a deed and a will, and equitable relief was asked solely on the ground that the vendor and the vendee both believed that the former only had an undivided interest in the land sold, when in truth she possessed the fee. Chief Justice Redfield, in his recent edition of Story's Equity Jurisprudence, (vol. 1, § 138,) remarks : "That where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained, by mere mistake or misapprehension, and

2—69

there was no gross negligence on the part of the plaintiff, * * equity will interfere, in its discretion, in order to prevent intolerable injustice. This we believe to be the clearly defined and well established rule upon the subject, in courts of equity, both in England and America." Lord Chancellor Thurlow, in *Calverley v. Williams*, 1 Ves. 210, says : "No doubt, if one party thought he had purchased *bona, fide*, and the other party thought he had not sold, that is a ground to set aside the contract, that neither party may be damaged : because it is impossible to say one shall be forced to give that price for part only which he intended to give for the whole, or that the other shall be obliged to sell the whole for what he intended to be the price of part only. Upon the other hand, if both understood the whole was to be conveyed, it must be conveyed." A similar ruling was made in *Bron vv. Lamphear*, 35 Vt. 252, where a vendor conveyed a lot of land on which was a spring, from which he, by means of an aqueduct, supplied his premises with water, the aqueduct being of greater value than the price paid for the land. The vendor did not intend to part with the right to use the water from the spring, but by mistake his deed to the vendee contained no reservation of such right ; the latter being in ignorance at the time of his purchase of the existence of the spring. And it was held upon bill brought, that the vendor was entitled either to a conveyance from the vendee of the right to use the aqueduct, or to a re-conveyance of the land on re-payment of the price thereof, the vendee to have his election as to which of these modes of relief the vendor should have, the court, among other things, remarking : "The defendant takes by the conveyance a value which he did not purchase, and the case presents such elements of mistake and surprise as afford a solid ground for relief." Mr. Justice Story says : "Cases of surprise, mixed up with a mistake of law, stand upon a ground peculiar to themselves, and independent of the general doctrine. * * When the surprise is mutual,

there is, of course, a still stronger ground to interfere; for neither party has intended what has been done. They have misunderstood the effect of their own agreements or acts, or have pre-supposed some facts or rights existing, as the basis of their proceedings, which, in truth, did not exist. Contracts made in mutual error, under circumstances material to their character and consequences, seem, upon general principles, invalid—*non videntur, qui errant, consentire,* is a rule of the civil law, and it is founded in common sense and common justice." 1 Story Eq. Jur., § 134. It was decided in *Champlin v. Laytin,* 1 Edwards Chy. 467, that a contract entered into under a mutual misconception of legal rights, amounting to a mistake of law in the contracting parties, is as liable to be rescinded as one founded in a mistake of fact. In his opinion in that case, the vice chancellor says: "If both parties should be ignorant of a matter of law, and should enter into a contract for a particular object, the result whereof would, by law, be different from what they mutually intended, here, on account of the surprise or immediate result of the mistake of both, there can be no good reason why the court should not interfere in order to prevent the enforcement of the contract, and relieve from the unexpected consequences of it. To refuse would be to permit one party to take an unconscientious advantage of the other, and to derive a benefit from the contract which neither of them intended it should produce."

The Lord Chancellor says, in *Stapylton v. Scott,* 13 Ves. 425 : "I admit, where the contract has proceeded upon the mistake of *both* parties, that avoids the contract at law as well as here." And an agreement was decreed to be given up upon the ground of surprise, neither party understanding the effect of it. *Willan v. Willan,* 16 Ves. 82. This exception to the rule is recognized in the case of *Hunt v. Rousmanier,* 8 Wheat. 174, Marshall, C. J., saying: "We find no case which we think precisely in point, and are unwilling, where the effect of the instrument is acknowl-

edged to have been entirely misunderstood by both parties, to say that a court of equity is incapable of affording relief." So, also, in *Tyson v. Tyson*, 31 Md. 134, on the ground of mistake and surprise, a deed, resettling trusts, which was signed without having been read, was corrected. The case of *Evans v. Llewellin*, 1 Cox 333, is exclusively put in the decree upon the ground of surprise, "the conveyance having been obtained and executed improvidently," without time for proper reflection. In *King v. Doolittle*, 1 Head (Tenn.) 77, it was held that where the mistake was one both of law and fact, though the latter is the result of the former, relief will be granted, when justice and equity require it. And the court there said: "If a contract is entered into in good faith, by which it is mutually understood that, for an adequate consideration, the one party shall part with and the other acquire a valid title to property, and it turn out that, at the time of the contract, by the operation of some settled principle of law, of which they were alike ignorant, the supposed title was wholly valueless, or did not exist in legal contemplation; in such case, the mistake is not a mere mistake at law; it involves in some measure a mistake of fact as well as of law, as the very idea of title comprehends as well matter of fact as of law.    *    *    It is enough that there was a radical defect inherent in the subject matter of the contract, of which the parties were mutually ignorant.    *

*    The contract, therefore, was not what either of the parties understood and intended it should be." In that case the mutual mistake arose because of an omission of an essential provision of the charter of a bank, the copy furnished being unintentionally imperfect. Here, the mutual mistake occurred because of the inadvertent insertion of words, of which both parties were ignorant; words in the order of sale at variance with the petition for that order, with the publication, and with the certificate of appraisement. The parties bargained for the fee, and there was, under the administration proceedings, no fee for sale. The

subject matter of their contract had, in legal contemplation, no more existence than if it had been a dwelling already consumed by fire, or a messuage already swept away by a flood. "Both parties intended the purchase and sale of a subsisting thing, and implied its existence as the basis of their contract. It constituted, therefore, the very essence and condition of the obligation of their contract." 1 Story Eq. Jur., § 142.

I find it difficult to distinguish the case of *King v. Doolittle*, *supra*, from the present one in principle; for it seems quite obvious that the contracting parties in each instance were alike ignorant as to the essential features of the contract they entered into, and of the mistake committed, by reason of the unwarranted *omission* of words in the one case, and of their unwarranted *insertion* in the other. But there is another important element in this case which should not pass unnoticed. Townley is induced to have the note allowed against the estate of Welton; he is suddenly called upon to bid at the administration sale; he is afraid to *bid* for fear of jeoparding the interests confided to his care; afraid *not* to bid for fear that his non-action will equally result in detriment to those interests. In this extremity he appeals to the administrator, he appeals to the attorney of the estate, if the title on sale will be valid, and they both unite in assurances of its validity. In cases of this sort, it is held that when the mutual mistake is attributable to the agent of the adversary seeking to take advantage of it, equity will relieve. *Green v. Morris & Essex R. R. Co.*, 1 Beas. 165, Chancellor Williamson observing: "The mutual mistake is to be attributed to the agent of the defendants. He prepared the deed, and he assured the complainant that it was correct. There was no want of ordinary prudence in the complainant's relying upon his judgment. He was a lawyer by profession, and it was natural and becoming that the complainant should have confided in him." To the same effect are *Woodbury, &c., Bank v. Charter Oak Ins. Co.*, 31 Conn. 517; *Longhurst*

*v. Star Ins. Co.*, 19 Iowa 364. In conclusion, we are of opinion, that there are, in this case, such elements of absence of consideration, of reliance on the representations of the agent of the estate, of surprise, mutual mistake and unconscionable advantage, as should in equity and good conscience, take this case out of the general rule, and forbid our sanctioning the decree; for should we approve that decree, we would thereby, in effect, declare that the heirs of Lewis Welton's estate should retain the unconscionable advantage which they have gained, and become *enriched* by the *very debt* of their ancestor.

We, therefore, in order to do what the very right and justice of this case require, reverse the judgment and remand the cause, with directions that the court below, will, at the option of the plaintiff, either dismiss the petition or order the note to be delivered to Mrs. Townley, as well as the money paid by her, together with interest thereon; cancel the entry of satisfaction on the record of the deed of trust; order the relinquishment of whatever rights were acquired at the probate sale; and then proceed to foreclose the deed of trust, and in so doing, adjust the rights and equities of the parties litigant, in the manner customary where the mortgagee has been in possession. All concur.

REVERSED.