T. W. CLARK v. G. H. CARTER, Trustee, et al., Appellants.

Division One, March 31, 1911.

1. CONVEYANCE: Mistake of Fact: False Representation. Where it is apparent from the record that plaintiff has grounded his suit, to cancel a deed of trust and a note given, and to recover money paid, for certain land, upon a mutual mistake of the grantor's power to convey, a failure to establish pleaded false representations made by the grantor will not defeat plaintiff's action. If both believed grantor had the right, under her husband's will, to convey both her life estate and the remainder, and both acted on that mistaken belief, it is of no consequence that no false representations were proven.

2. SETTING ASIDE DEED: Mutual Mistake as to Meaning of Will. Where both the executrix and the plaintiff believed she had authority, under her husband's will, to sell both her life estate and the remainder in fee, and acting upon that belief she

conveyed the land to him, and in payment he paid her $500 in money and executed his note for the balance, securing it by a deed of trust on the land, and both entirely misunderstood the meaning of the will, it was a mutual mixed mistake of law and fact, and in such case equity grants relief, and will cancel the note and mortgage, and require a return of the excess of the money paid over the value of her life estate.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans*, Judge.

AFFIRMED.

*Jas. Orchard* and *O. L. Haydon* for appellants.

(1) Plaintiff bases his cause of action on false and fraudulent representations and also on a mutual mistake of law and facts. One alleging false and fraudulent representations must prove the facts as alleged. In other words, fraud will not be presumed but must be proved. Edwards v. Noell, 88 Mo. App. 434. Where fraudulent representations are made and the party to whom they are made does not rely on them, but seeks from other quarters to verify the statement, he cannot afterwards claim deceit was practiced on him. Anderson v. McPike, 86 Mo. 293; Priest v. White, 89 Mo. 609. So the testimony in this case, if testimony you should call it, shows that the plaintiff did not rely on any representations made by the executrix, but sought other advice and consulted a lawyer, who is attorney of record for plaintiff in this case, and exhibted to him the abstract of title and the will. The lawyer himself testified that he examined all these things and advised that the title was good. Mrs. Harber, the executrix, had nothing to do with this part of the transaction, and so far as the testimony shows, she never made any representations to the plaintiff and gave an ordinary executrix's deed together with quitclaim deed from herself and Charles Harber, the adopted son. The executrix's deed is only a quitclaim

deed itself, which put the plaintiff on his guard, and he purchased the property with all the defects and equities that might exist against the title. (2) The plaintiff claims in his petition that it was a mutual mistake of facts as to the power conferred on said Margaret M. Harber by said last will and testament of Thomas Harber, deceased. Our contention is that there was no mutual mistake of facts or of law, but if there was a mutual mistake, it was a mutual mistake of law and not of fact, and if a mistake of law, then Margaret M. Harber was not responsible, since the plaintiff advised with and consulted lawyers relative to the matters and they advised him that the deed from her as executrix would be good, and would convey the title. Therefore, our contention is that if there was a mistake of law and not of fact, the plaintiff would not be entitled to recover. The rule is well settled that where a party is mistaken as to matter of law and not as to matter of fact, he cannot be relieved. Hendrix v. Wright, 50 Mo. 311. The court of equity will not grant relief against consequence of law. Price v. Estill, 87 Mo. 378; St. Louis v. Priest, 88 Mo. 602; Morgan v. Highleyman, 88 Mo. 621; Weinerth v. Trendley, 39 Mo. App. 333. (3) This is sale by the executrix of the will of Thomas Harber, deceased, and the rule of *caveat emptor* applies to such sales, as to all other judicial sales, and the party buys just such title as the executrix can sell, and if she had no title to sell he secured none, and was not entitled to any relief. Delassus v. Poston, 21 Mo. 533; Throckmorton v. Pence, 121 Mo. 50; Foley v. Boulware, 86 Mo. App. 674; Rowe v. Cattle Company, 99 Mo. App. 158; Cunningham v. Edsall, 200 Mo. 192.

*M. E. Morrow* for respondent.

(1) If this were an action at law for damages for false and fraudulent representations made by Margaret M. Harber to induce plaintiff to accept her ex-

Clark v. Carter.

ecutrix's deed, appellant's authorities under this head would be in point. But as plaintiff's petition nowhere charges that ''fraudulent representations'' were made by her, but instead thereof designates them ''erroneous representations,'' and this being an equitable action to rescind for mutual mistake of fact and failure of consideration for money paid, the authorities cited by counsel have no application whatever. (2) It was a mutual mistake of fact, or at most, one of mixed law and fact. If it were purely a mistake of law, we concede there is no relief from it. But the issue between plaintiff and defendant is as to whether or not it is a mistake of fact, as claimed by plaintiff, or one of law, as claimed by defendant. A case of mixed and mutual mistake of law and fact will be relieved in equity. Griffith v. Townley, 69 Mo. 13; Castleman v. Castleman, 184 Mo. 432; Smith v. Patterson, 53 Mo. App. 66; Belknap v. Seely, 14 N. Y. 143; Irick v. Fulton, 3 Gratt. (Va.) 193; King v. Doolittle, 1 Head (Tenn.) 77. Mistake in the ownership of land is a mistake of fact that equity will relieve, although the mistake arose from an erroneous view of the legal effect of a deed. Livingston v. Murphy, 187 Mass. 315. An administrator sold lands of his intestate, supposing that it was the fee that he was selling. The purchaser supposed that it was the fee he was buying. It turned out that nothing passed by the sale but the equity of redemption. *Held,* that this was such a mixed and mutual mistake of law and fact as entitled the purchaser to relief in equity. Griffith v. Townley, 69 Mo. 13. (3) The rule of *caveat emptor* only applies to administrators' sales when the purchaser obtained no title to the land by reason of failure of title in the deceased or sale under order of probate court for payment of debts. But where the deceased had title to the land, and the purchaser fails to obtain it by reason of some omission or irregularity in the proceeding, and has paid the purchase price, then he is entitled

to an accounting.   Tiedeman on Sales, 452, note 4;
Bartlett v. Glasscock, 4 Mo. 70; Cashion v. Faina, 47
Mo. 133; Estes v. Alexander, 90 Mo. 453; Donaldson
v. Allen, 182 Mo. 626.   The cases cited by counsel under
this head have no application to the facts in this case.

WOODSON, J.—This is the second appeal of this
cause to this court.   The opinion delivered upon the
former appeal is reported in the 200 Mo. 515.

The present suit is to set aside and cancel an
executrix's deed, conveying certain real estate to
plaintiff, upon the grounds of mistake, to declare null
and void a certain promissory note, given in part pay-
ment of the purchase money of said land, and a deed
of trust conveying the same land to G. H. Carter,
trustee, to secure the payment of said note, and to
recover $500, a part of the purchase money paid at
the time of the execution of the executrix's deed.   A
trial was had which resulted in a judgment and decree
for the plaintiff, and the defendants duly appealed the
cause to this court.

Thomas Harber was the testator, and Margaret
M. Harber was his widow and the executrix mentioned.
G. H. Carter was the trustee mentioned in the deed
of trust, and C. C. Carter was the administrator *de
bonis non* of the estate of said Margaret M. Harber.

As there is no question raised as to the plead-
ings, they will, therefore, be eliminated from the case,
with the passing observation that they were sufficiently
comprehensive to support the decree of the circuit
court.

The facts of the case are practically undisputed,
and they are correctly stated by the court in the de-
cree, as follows (formal parts omitted):

"Now, on this, the 16th day of December, A. D.,
1907, same being the thirteenth day of the regular De-
cember, 1907, term of this court, this cause coming on
to be heard, the plaintiff, T. W. Clark, appears by his

attorney, M. E. Morrow; the defendant, C. C. Carter, administrator *de bonis non* of the estate of Margaret M. Harber, deceased, and defendant, G. H. Carter, trustee, both appeared by their attorneys, James Orchard and O. L. Haydon, and the plaintiff and both the said defendants announced ready for trial. The court after hearing the evidence introduced by both the plaintiff and the defendants, and the argument of counsel, and being fully advised on all matters in issue in this cause, doth find that heretofore Thomas Harber died testate in Howell county, Missouri; that his last will was duly probated by the probate court of Howell county on the 27th day of April, 1892; that in said last will said Thomas Harber provided that there should be paid to the Board of Missions of the Cumberland Presbyterian Church, and the Educational Commission of the McAdow, Missouri, Ozark and Missouri Valley synods of the Cumberland Presbyterian Church, the sum of two thousand dollars each; that said bequests should be paid from the sale of real estate only, to be sold after the death of his wife, Margaret M. Harber, in case she should survive him. That said testator by his last will appointed one Milton Moore, trustee, with full power to sell real estate left by him, sufficient for the payment of said bequests, according to the provisions of said will. The court doth find further that said Margaret M. Harber, wife of said testator, survived her said husband; and that she duly qualified as executor of the last will of said Thomas Harber, deceased. That said Thomas Harber died seized and possessed of the following described lands in said Howell county, to-wit: Lots one and two of the southwest quarter of section thirty, township twenty-four, range eight west, the lands in question.

"The court doth further find that said Margaret M. Harber, as said executrix, on the 24th day of February, 1898, for a consideration of one thousand dollars, undertook to sell and convey to plaintiff all the

right, title and interest of the estate of said Thomas
Harber, deceased, in said lands; and that she executed
her executrix's deed therefor, which said deed is re-
corded in book 63, at page 169, of the deed records of
said Howell county; that in payment for said lands,
plaintiff paid to said executrix the sum of five hundred
dollars in cash, and executed and delivered to her a
note of the date last aforesaid, for the sum of five
hundred dollars and on the same date executed and
delivered to defendant, G. H. Carter, trustee, a deed
of trust of record in the office of the recorder of deeds
in said county, in book 64, page 37, by which he con-
veyed said lands to the said Carter, in trust to secure
the payment of said note. That in making and execut-
ing said executrix's deed, attempting to convey said
lands to plaintiff, said executrix represented to plain-
tiff that said Thomas Harber, by his said last will, did
empower and direct his executrix to sell and convey
said real estate for the purpose of paying said be-
quests, and did also give said executrix the power to
sell at public or private sale as might seem to her best;
and the court doth find that plaintiff, T. W. Clark,
believed and relied on the said representations as to
the power and authority of said executrix to sell and
convey good title to said lands, and that plaintiff paid
said money and executed and delivered said note and
deed of trust, believing that her said executrix's deed
conveyed the absolute title to said lands. The court
doth further find that said executrix departed this
life, and never at any time applied any part of the
consideration so received as aforesaid from plaintiff
for said lands, to the payment of any part of the be-
quests mentioned in said will. And the court doth find
that said executrix, as such, had no power to convey
the title to said lands and that her said executrix's
deed conveyed no title whatever to plaintiff, that the
payment by plaintiff to said executrix of said five hun-
dred dollars and the execution and delivery by him to

her of said note for a like sum and the execution and delivery by him to G. H. Carter, trustee, of said deed of trust conveying said lands, to secure the payment of said note, were without consideration and were executed and delivered under mutual mistake of facts, as to the intention of said Thomas Harber in conferring a power of sale upon his said executrix. The court finds that this power of sale of said real estate was conferred by said will upon one Milton Moore, as trustee, to be exercised after the death of Margaret M. Harber, in case his said wife should survive said testator.

"The court finds that said Margaret M. Harber departed this life without paying any part of the legacies aforesaid, and that neither of said legacies have ever been paid in full by anyone else. And the court doth find that plaintiff ought to recover from the estate of the said Margaret M. Harber, deceased, the said sum of five hundred dollars so paid her as aforesaid on said lands; also that said note of $500 for the remainder of said consideration for said lands, and the deed of trust executed as aforesaid to said G. H. Carter, should be cancelled and for naught held. The court doth further find that the life estate of said Margaret M. Harber, deceased, in said lands, which was conveyed to plaintiff by her quitclaim deed, was worth the sum of two hundred and fifty dollars. The court doth find that defendant, C. C. Carter, administrator *de bonis non* of the estate of said Margaret M. Harber, deceased, should pay plaintiff two hundred and fifty dollars, the amount paid by plaintiff to said Margaret M. Harber, as aforesaid, less the value of her life estate in said real estate; and that he cancel and deliver to plaintiff said note of five hundred dollars, executed by plaintiff to said Margaret M. Harber, as aforesaid, on which payment and delivery of note,

plaintiff should quitclaim his interest in said lands to the estate of said Margaret M. Harber, deceased.

"Therefore, it is considered, ordered and adjudged and decreed by the court that said note of five hundred dollars, dated February 24, 1898, and the said deed of trust executed by plaintiff as aforesaid, conveying said lands to G. H. Carter, trustee, of the date and record last aforesaid, be and the same is hereby cancelled and for naught held and esteemed. And the court doth further order, adjudge and decree that plaintiff have and recover of and from defendant, C. C. Carter, administrator of the estate of Margaret M. Harber, deceased, the sum of two hundred and fifty dollars, the amount paid by plaintiff as aforesaid to said executrix, less the value of her life estate in said lands.

"It is further ordered, adjudged and decreed by the court that the temporary injunction heretofore granted in this cause be and the same is hereby made perpetual; and it is further ordered that defendant, C. C. Carter, administrator, as aforesaid, pay all costs of this action in this court."

To which action of the court in making and entering said finding and judgment the defendants then and there in open court objected and excepted at the time.

Such additional facts as may be necessary for a proper understanding of the questions involved in the case will be stated in connection with the question presented.

There are but two errors assigned in this court:

"First. The court erred in admitting incompetent, illegal and irrelevant testimony over the objections of defendants;

"Second. The court erred in finding the issues for the plaintiff and against the defendants."

I. We will first dispose of the objection made to the introduction of testimony.

Mr. Morrow, counsel for respondent, and the attorney who passed upon the abstract of title to the land, was asked certain questions, and he made certain answers thereto regarding the title. While counsel for appellants have assigned as error the action of the trial court in admitting the testimony of Mr. Morrow, yet they have not briefed the point, or cited any authority in support thereof, nor have they argued the question in any manner. We, therefore, take it for granted that counsel have abandoned this assignment, and we will eliminate it from further consideration.

II. This brings us to the consideration of the main proposition presented in this case, namely, the contention of counsel for appellants that the findings and decree of the court should have been for their clients and not for the respondent.

That contention is predicated upon the grounds, that this is a bill in equity to rescind the sale, set aside the deeds, and recover the purchase money paid for the land, because of false and fraudulent representations made by Margaret M. Harber, the executrix, regarding her title and authority to sell the land under the will of her husband, Thomas Harber. Bottomed upon that contention is the further insistence, that the record is barren of all evidence tending to show that she made any false or fraudulent representations regarding her title to the land or her authority under the will to sell the same.

This last insistence is unquestionably true, but that is of no practical benefit to appellants, for the reason that counsel misapprehend the theory of respondent's case. It is not grounded upon false and fraudulent representations, but is based upon the mutual mistake of respondent and the executrix. It is perfectly apparent from this record, as contended for by counsel for respondent, that both of them believed that she had ample authority under the will to convey to him

the remainder, after her life estate, in and to the land in controversy; and both acting upon that belief, she executed the executrix's deed and he accepted the same and paid for it in the manner previously stated.

Counsel for appellants insist that even though it be conceded that this contention of respondent is correct, still he is not entitled to a recovery, for the reason that the mistake is one of law and not of fact, against which the law affords no relief. If it is a mistake of law, then respondent has no cause of action, and he is not entitled to the relief prayed for. [Hendrix v. Wright, 50 Mo. 311; Price v. Estill, 87 Mo. 378; St. Louis v. Priest, 88 Mo. 612; Norton v. Highleyman, 88 Mo. 621.]

In our opinion, however, the mistake complained of is not a mistake of law purely, but it is a mistake of law and fact. It is more like the case of Griffith v. Townley, 69 Mo. 13, than anyone to which our attention has been called. In that case SHERWOOD, C. J., stated the facts and the law of the case as follows:

"In 1864, one Lewis Welton borrowed of Mrs. Peninah Townley, as representative of the estate of her husband, John M. Townley, deceased, $4,600, giving a note therefore, and securing the note by a deed of trust on certain land, K. W. Townley, being the trustee. Welton died without having paid any portion of either principal or interest of the note. His estate was administered by one Jesse Welton, in 1866, who came to K. W. Townley, the trustee and agent for his mother, and induced him to have the note allowed against the estate, saying that if he would do this, he, the administrator, would have the court make an order for the sale of the land, when it would bring much more than if sold under the deed of trust alone.

"After this claim was allowed, as well as some others of minor importance, the administrator procured an order of sale for the payment of debts as

he had promised, and the sale took place; Townley, as the agent for his mother, becoming the purchaser of the land mentioned in the deed of trust, for the sum of $6000; purchasing on the faith of the public statements and representations of the administrator at the sale (who acted as auctioneer, and also bid against him, and asked him to bid on the land), that he would 'sell a clear title;' that the land would be free from incumbrance; that he would pay Mrs. Townley's note. McCord, attorney for the estate of Welton, also told Townley, who made inquiries of him at the time of the sale respecting the title, that the title would be all right, and to 'go on and purchase.'

"The testimony is without rebuttal, and conclusive as to these statements of the administrator. There is also uncontradicted testimony to the effect that Welton, just when the land was knocked off, stated 'that the land had brought barely enough to pay off the mortgage of Mrs. Townley, and the expenses.' There is also similar testimony to the effect that when inquiry was made, immediately after the land was stricken off, the reply was made, either by Welton, McCord or Townley, that the last named 'had got the land to satisfy the mortgage.' Six thousand dollars was all the land, in absolute fee, was worth.

"There was nothing in the proceedings in any manner referring to the deed of trust. The order of sale, however, though in usual form in other respects, requires the sale of 'all the right, title and interest of the said Lewis Welton,' in the land mentioned in the order. But the petition for the sale, the order of publication, the certificate of appraisement, the report, the order approving it, and the deed, are in the customary form where the land is sold for the payment of ordinary debts, and give not the remotest indication that anything less than the fee was sold, or intended to be sold. In addition to that, and confirmatory of the indications borne by the probate files and records, one

of the county justices stated that some objections were raised to the approval of the report; that the appraisers were sent for, who 'stated that they had appraised the whole value of the land, without reference to the mortgage;' and it was upon this understanding, i. e., that the whole title was appraised and sold, that the county court approved the sale. Upon this approval, and the delivery of the deed, Townley delivered Welton's note, then amounting, with accrued interest, to some $5040, to the administrator, paid in money the difference between the note and his bid, and acknowledged satisfaction on the record of the deed of trust.

"Welton's administrator died, and his administrator, Jacob Hull, administered upon the estate of the deceased administrator, made a settlement of the estate of Lewis Welton, and that estate is now free from debt. The present proceeding, instituted by the public administrator of Osage county, as administrator *de bonis non* of Lewis Welton's estate, has for its object the cancellation of the entry of satisfaction on the record, the substitution of the public administrator to the rights formerly possessed by Mrs. Townley as creditor of the estate, and that the deed of trust be foreclosed. The prayer of the petition was granted, and a decree as prayed for entered, the debt then amounting to over $10,000. We are now asked to give our sanction to this decree; the plaintiff claiming in support of it, that only the equity of redemption passed by reason of the probate sale; that if any mistake has occurred it was a mistake of law; a mistake of such a fatal character that equity, with all its beneficent and healing powers, possesses no ability to redress.

"It must be confessed that this position is in accordance with the general and very salutary rule, and the only inquiry to which we must address ourselves, is whether the circumstances of this case are such as will, in the present instance, prevent that rigid rule from having its customary way. In the Bank v. Dan-

iel, 12 Pet. 32, it was said, quoting from Hunt v. Rous-
maniere, 1 Pet. 15, 'Whatever exceptions there may be
to this rule, they are not only few in number, but they
will be found to have something peculiar in their char-
acter.' The brief limits of an opinion will not admit
of detailed examination of the numerous and often
conflicting authorities respecting the extent to which
courts of equity proceed in relieving against mistakes
of law. If, however, the principle to be deduced from
the great current of authority on this vexed question
is correctly announced in the case just cited, then the
inquiry must be, are there in the present instance such
ingredients as entitle it to be placed in the narrow and
infrequent list of exceptions to a generally prevalent
rule? We cannot doubt that Townley acted, when mak-
ing the purchase at the administrator's sale, under the
confident belief that he was purchasing 'a clear title,'
or title in fee; nor can we doubt that, under this belief,
he paid the difference between the amount of the note
and the bid, surrendered that note and acknowledged
satisfaction of the deed of trust. And it is equally be-
yond question that he was led to this course by the
promises and assurances of the representative of the
estate, Welton, who doubtless, as evinced by his con-
temporaries declarations, supposed he was selling the
land in fee simple absolute. If this was the belief of
both parties, then it follows that if Townley did not
by his purchase procure the fee as he intended, and as
Welton intended he should, then it is a case of mutual
mistake; one of so fundamental a character as appeals
very strongly for equitable interposition. If, on the
other hand, Welton was actuated by no honest purpose
in the course which he pursued, and the representa-
tions which he made, then the contract of sale was
tainted with such fraud as to utterly vitiate its valid-
ity. But whether the contract was the result of mis-
take or fraud, in either event an unconscionable advan-
tage has been obtained by selling a barren and worth-

less equity of redemption, which the purchaser did not intend to buy, for the full price of a title in fee, which the buyer did intend to buy, and which the administrator, if honest, did intend to sell him.

"These are circumstances of such peculiar char-. acter, as ought, it seems, to go far towards mitigating the rigor of the general rule. In short, this case may be said to rest, as Mr. Justice STORY observes of another (1 Story Eq. Jur., sec. 118), upon 'mixed considerations' and not exclusively upon mere mistake or ignorance of the law. Where there was a mutual mistake of parties as to the interest of the vendor in the land sold, the Court of Appeals of Virginia held that the sale should be set aside. [Irick v. Fulton, 3 Gratt. 193.] And this, notwithstanding the whole matter arose from a mutual misconstruction of the deed and a will, and equitable relief was asked solely on the ground that the vendor and the vendee both believed that the former only had an undivided interest in the land sold, when in truth she possessed the fee. Chief Justice REDFIELD, in his recent edition of Story's Equity Jurisprudence (vol. 1, sec. 138), remarks, 'that where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained, by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff, . . . equity will interfere, in its discretion, in order to prevent intolerable injustice. This we believe to be the clearly defined and well established rule upon the subject, in courts of equity, both in England and in America.' Lord Chancellor THURLOW, in Calverley v. Williams, 1 Ves. 210, says: 'No doubt, if one party thought he had purchased bona fide, and the other party thought he had not sold, that is a ground to set aside the contract, that neither party may be damaged; because it is impossible to say one shall be forced to give that price for part only which he intended to

give for the whole, or that the other shall be obliged
to sell the whole for what he intended to be the price
of part only.   Upon the other hand, if both understood
the whole was to be conveyed, it must be conveyed.'
A similar ruling was made in Brown v. Lamphear, 35
Vt. 252, where a vendor conveyed a lot of land on which
was a spring, from which he, by means of an aqueduct,
supplied his premises with water, the aqueduct being
of greater value than the price paid for the land.   The
vendor did not intend to part with the right to use the
water from the spring, but by mistake his deed to the
vendee contained no reservation of such right; the lat-
ter being in ignorance at the time of his purchase of
the existence of the spring.   And it was held upon bill
brought, that the vendor was entitled either to a con-
veyance from the vendee of the right to use the aque-
duct, or to a re-conveyance of the land on re-payment
of the price thereof, the vendee to have his election
as to which of these modes of relief the vendor should
have, the court, among other things, remarking: 'The
defendant takes by the conveyance a value which he
did not purchase, and the case presents such elements
of mistake and surprise as afford a solid ground for
relief.'   Mr. Justice Story says: 'Cases of surprise,
mixed up with a mistake of law, stand upon a ground
peculiar to themselves, and independent of the gen-
eral doctrine.   .   .   When the surprise is mutual, there
is, of course, a still stronger ground to interfere; for
neither party has intended what has been done.   They
have misunderstood the effect of their own agreements
or acts, or have presupposed some facts or rights ex-
isting, as the basis of their proceedings, which, in truth,
did not exist.   Contracts made in mutual error, under
circumstances material to their character and conse-
quences, seem, upon general principles, invalid—*non
videntur, qui errant, consentire,* is a rule of the civil
law, and it is founded in common sense and common
justice.'   [1 Story Eq. Jur., sec. 134.]   It was decided

in Champlin v. Laytin, 1 Edward's Ch. 467, that a contract entered into under a mutual misconception of legal rights, amounting to a mistake of law in the contracting parties, is as liable to be rescinded as one founded in a mistake of fact. In his opinion in that case, the vice-chancellor says: 'If both parties should be ignorant of a matter of law, and should enter into a contract for a particular object, the result whereof would, by law, be different from what they mutually intended, here, on account of the surprise or immediate result of the mistake of both, there can be no good reason why the court should not interfere in order to prevent the enforcement of the contract, and relieve from the unexpected consequences of it. To refuse would be to permit one party to take an unconscientious advantage of the other, and to derive a benefit from the contract which neither of them intended it should produce.'

"The Lord Chancellor says, in Stapylton v. Scott, 13 Ves. 425: 'I admit, where the contract has proceeded upon the mistake of both parties, that avoids the contract at law as well as here.' And an agreement was decreed to be given up upon the ground of surprise, neither party understanding the effect of it. [Willan v. Willan, 16 Ves. 82.] This exception to the rule is recognized in the case of Hunt v. Rousmaniere, 8 Wheat. 174, MARSHALL, C. J., saying: 'We find no case which we think precisely in point, and are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say that a court of equity is incapable of affording relief.' So, also, in Tyson v. Tyson, 31 Md. 134, on the ground of mistake and surprise, a deed, re-setting trusts, which was signed without having been read, was corrected. The case of Evans v. Llewellin, 1 Cox, 333, is exclusively put in the decree upon the ground of surprise, 'the conveyance having been obtained and executed improvidently,' without time for

proper reflection. In King v. Doolittle, 1 Head (Tenn.) 77, it was held that where the mistake was one both of law and fact, though the latter is the result of the former, relief will be granted, when justice and equity require it. And the court there said: 'If a contract is entered into in good faith, by which it is mutually understood that, for an adequate consideration, the one party shall part with, and the other acquire a valid title to property, and it turns out that, at the time of the contract, by the operation of some settled principle of law, of which they were alike ignorant, the supposed title was wholly valueless, or did not exist, in legal contemplation; in such case, the mistake is not a mere mistake of law; it involves in some measure a mistake of fact as well as of law, as the very idea of title comprehends as well matter of fact as of law. . . . It is enough that there was a radical defect inherent in the subject-matter of the contract, of which the parties were mutually ignorant. The contract, therefore, was not what either of the parties understood and intended it should be. In that case the mutual mistake arose because of an omission of an essential provision of the charter of a bank, the copy furnished being unintentionally imperfect. Here, the mutual mistake occurred because of the inadvertent insertion of words, of which both parties were ignorant; words in the order of sale at variance with the petition for that order, with the publication, and with the certificate of appraisement. The parties bargained for the fee, and there was, under the administration proceedings, no fee for sale. The subject-matter of their contract had, in legal contemplation, no more existence than if it had been a dwelling already consumed by fire, or a messuage already swept away by flood. 'Both parties intended the purchase and sale of a subsisting thing, and implied its existence as the basis of their contract. It constituted, therefore, the very essence and condition of the obligation of their contract.' [1 Story Eq. Jur., sec. 142.]

"I find it difficult to distinguish the case of King v. Doolittle, supra, from the present one in principle; for it seems quite obvious that the contracting parties in each instance were alike ignorant as to the essential features of the contract they entered into, and of the mistake committed, by reason of the unwarranted omission of words in the one case, and of their unwarranted insertion in the other. But there is another important element in this case which should not pass unnoticed. Townley is induced to have the note allowed against the estate of Welton; he is suddenly called upon to bid at the administration sale; he is afraid to bid for fear of jeopardizing the interests confided to his care; afraid not to bid for fear that his non-action will equally result in detriment to those interests. In this extremity he appeals to the administrator, he appeals to the attorney of the estate, if the title on sale will be valid, and they both unite in assurances of its validity. In cases of this sort, it is held that when the mutual mistake is attributable to the agent of the adversary seeking to take advantage of it, equity will relieve. [Green v. Railroad, 1 Beas. 165.] Chancellor WILLIAMSON observing: 'The mutual mistake is to be attributed to the agent of the defendants. He prepared the deed, and he assured the complainant that it was correct. There was no want of ordinary prudence in the complainant's relying upon his judgment. He was a lawyer by profession, and it was natural and becoming that the complainant should have confided in him.' To the same effect are Woodbury Bank v. Charter Oak Ins. Co., 31 Conn. 517; Longhurst v. Star Ins. Co., 19 Iowa 364. In conclusion, we are of opinion, that there are in this case such elements of absence of consideration, of reliance on the representations of the agent of the estate, of surprise, mutual mistake and unconscionable advantage, as should in equity and good conscience, take this case out of the general rule, and forbid our sanctioning the decree; for should we ap-

prove that decree, we would thereby, in effect, declare that the heirs of Lewis Welton's estate should retain the unconscionable advantage which they have gained, and become enriched by the very debt of their ancestor.''

The facts in that case were as well known to the parties thereto as were the facts of the case at bar known to the parties here. It was not only a question of knowledge, but the result of the transaction was different from what both of them mutually intended that it should be; and that result was the direct result of their mutual mistake of fact, namely, that the executrix had the authority under the will to sell the remainder in fee, when in fact she had no such power. That authority was given to Mr. Moore, but not to the testatrix. While the codicil to the will substituted Margaret M. Harber as executrix in lieu of Mr. Moore as executor, it did not revoke the latter's authority to sell the land, nor did it confer that power upon the former.

As was said by Chief Justice MARSHALL in Hunt v. Rousmaniere, supra, we ''*are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say that a court of equity is incapable of affording relief.*''

In the recent case of Livingstone v. Murphy, 187 Mass. 315, after a careful consideration of this question, the Supreme Court of Massachusetts held that a mistake as to the ownership of land is a mistake of fact in regard to which equity will grant relief, although the mistake arose from an erroneous view of the legal effect of a deed. That case is applicable to the case at bar, for the reason that there is no differentiation that can be made between a mistake as to the legal effect of deed and a will.

We are, therefore, of the opinion that there was a mutual mistake between the two parties as to the law

and facts of the case, and that a court of equity should grant relief.

III. ·Counsel for appellants finally contended that the will of Thomas Harber does in fact authorize the executrix to sell the real estate in question.

The substance of the will is set out in the opinion disposing of the former appeal, and it would serve no useful purpose to reproduce it here. It seems, from a consultation of that opinion, that this court entertained different views upon this question from those here presented by counsel. It was not only there indicated that the executrix had no such power to sell and convey the remainder under the will, but the judgment was reversed and the cause remanded, with an intimation to respondent that he might, if he saw proper to so do, so amend his petition as to present the case which is now before us. In pursuance to that suggestion, the amendment was made and a trial had, which resulted again in a decree in favor of the plaintiff, from which the defendants appealed.

Having discovered no error in the record, we are of the opinion that the judgment should be affirmed; and it is so ordered.

All concur, except *Valliant, J.,* absent.