LINA I. PICOTTE, Respondent, v. RUHAMAH B. MILLS, Appellant.

Springfield Court of Appeals, March 11, 1918.

1. **PAYMENT: Money Received: Mistake of Law or Fact.** Ownership of land is a mixed question of law and fact, or rather a fact based on and resulting from the law, and sufficient to uphold an allegation of mistake of fact in an action for money paid under mistake for title to land owned by plaintiff.

2. ———: ———: **Mutual Mistake.** Money received under a mutual mistake of fact as to ownership of land can be recovered in an action at law for money had and received.

3. ———: ———: ———. When one person sells land or a definite interest therein to another, and each party acts under the assumption and mistaken belief that the vendor has the interest and title he bargains to sell and for which he receives the money but such is not the fact, then the money has been paid under a mutual mistake of fact and may be recovered.

4. ——————: **Recovery of Money Paid by Mistake: Negligence.** Where money is paid under mistake that is mutual, negligence of the party paying it does not bar his recovery thereof.

5. ——————: **Money Paid under Mistake: Defenses.** That the person receiving money paid under mutual mistake of fact has spent it is no defense to an action to recover it.

6. **DESCENT AND DISTRIBUTION: Family Settlement.** The binding force of family settlements, like other settlements, is based on the fact of a compromise, a yielding of some real or bona-fide claim.

7. **PAYMENT: Mutual Mistake: Quitclaim Deed.** Where defendant and plaintiff were both mistaken in thinking that title to land was in defendant, whereas it was in plaintiff, and under such mistake plaintiff paid defendant for his interest, it was no defense to plaintiff's action to recover back such purchase money that defendant's deed to plaintiff of the property was only a quitclaim.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby*, Judge.

AFFIRMED.

*Watson & Page* and *Williams & Galt* for appellant.

*Patterson & Patterson* for respondent.

STURGIS, P. J.—This is an action for money had and received, the object being to recover back money paid by plaintiff to defendant under a mistake. The plaintiff had judgment and the defendant appeals assigning numerous errors. It will be quite impossible within the confines of an ordinary opinion to state all the facts and discuss in detail the twenty odd distinct propositions of law, many of them with several subdivisions, contained in appellant's able and painstaking briefs. We have examined these briefs with care but can only discuss such phases of the case as seem to us most important.

Objection was duly made and defendant insists that the petition fails to state a cause of action. The material allegations (which will serve as a statement of facts also) are these: Thos. E. Hendrix died intes-

tate in Greene County, Missouri, leaving no lineal descedants. His heirs at law consisted of this plaintiff, his widow, since remarried, his father and mother, one brother, four sisters of whom defendant is one, and the descendants of one brother and sister deceased. At and prior to the time of his death this plaintiff and her said husband were the owners of an estate by the entirety, under a deed to plaintiff and her said husband jointly, in and to eighty acres of land in Greene County, Missouri, of the value of eight thousand dollars. This plaintiff was ignorant of such title and of the fact that after and by the death of her said husband she became and was the sole owner of said land. The defendant, and the other collateral heirs, were also ignorant of such facts. Acting on the assumption that the defendant owned an undivided eighteenth of said land by descent from said Thos. E. Hendrix, when in fact defendant had no interest whatever therein, plaintiff purchased defendant's supposed interest for $444.44 and paid defendant that amount therefor. On discovering said mistake the plaintiff demanded the return of the money so paid by her to defendant through mutual mistake for the interest that defendant did not own.

The objection to the petition stating these facts is that plaintiff could only recover on a mutual mistake of fact and that the allegations as to the parties being ignorant as to the ownership of the land is an allegation of ignorance as to a matter of law. We shall see when we come to discuss the evidence, in connection with this allegation, that ownership is a mixed question of law and fact or rather is a fact based on and resulting from the law (Clark v. Carter, 234 Mo. 90, 100, 107, 136 S. W. 310), and is sufficient to uphold an allegation of a mistake of fact. The allegation that each party was ignorant of the fact that plaintiff was the sole owner of the land when making the deal and that the money was paid "through mutual mistake of fact" are sufficient to state a cause of action to recover back money paid through mutual mistake. This is es-

pecially true where the objection comes after trial or
by mere objection to the introduction of evidence.

The evidence shows that when plaintiff's husband
died she and deceased's brother were appointed ad-
ministrators of the husband's estate and jointly admin-
istered on same. This estate consisted of about $80,000
in personal property and the homestead of about five
acres in the town of Bois dArc (in addition to the
eighty acres in question which was really not a part
of the estate). It is conceded that this eighty acres of
land was conveyed by a deed to the husband and wife
jointly and that the wife took full title to the same
by suvivorship. [Frost v. Frost, 200 Mo. 474, 481, 98
S. W. 527; Hume v. Hopkins, 140 Mo. 65, 72, 41 S. W.
784.] Notwithstanding this fact, of which all the par-
ties were ignorant, the administrator without looking
at the deed inventoried this land as belonging to the es-
tate of Thos. E. Hendrix. The estate was then ad-
ministered and settlement made on the theory that the
wife, there being no children or descendants, was en-
titled to one-half the estate and the collateral heirs
took the other half, the defendant taking one-ninth of
such half. On this basis the collaterial inheritance
tax was assessed and paid. The rent from this eighty
acres was carried into the assets of the estate. There
were few if any debts to be paid, the expenses of ad-
ministration were not large and nearly all the person-
alty was distributed in kind at the final settlement.
Nothing was done in the probate court as to the land
except to place it on the inventory and charge the rent
received as assets of the estate.

On final settlement of the estate the distribution
of the property in kind was looked after by the plain-
tiff's co-administrator, the defendant's brother and
himself a distributee, along with the attorney for the
estate. The parties, other than plaintiff and one other,
met together at the attorney's office and reached the
agreement in this respect, called by defendant a "family
settlement." There was no dispute as the amount
each was to receive and very little as to what specific

property each was to take. Just how or why is not shown but plaintiff's homestead in the town property came up for discussion at this time and aroused a little feeling but it was agreed all around that the widow, this plaintiff, would sell her homestead for one thousand dollars cash to deceased's father, one of the collateral heirs, and a deed to such interest was executed. All the parties still believing that the eighty acres of land desended to them as tenants in common, the widow made a proposition through her brother-in-law to purchase the one-half supposed to belong to the collateral heirs for $4000. The other parties, inclusive of the defendant, wanted a higher price but as this was all plaintiff would give the deal was closed, the money paid and quit-claim deeds executed by the parties—that for defendant reciting the exact consideration paid, $444.44.

That money received under a mutual mistake of fact can be recovered in an action at law for money had and received must be conceded. [Miller v. Fire Brick Co., 139 Mo. App. 25, 33, 119 S. W. 976; Bone v. Friday, 180 Mo. App. 577, 167 S. W. 599; Norton v. Bohart, 105 Mo. 615, 629, 16 S. W. 598.] The defendant claims, however, that the mistake in this case was not mutual but unilateral on plaintiff's part, the defendant merely making a quit-claim deed for whatever interest she might have in the land. The facts are, however, as both parties testified, that they both believed and acted under the belief that the land was owned by Thos. E. Hendrix at his death in fee instead of by him and his wife by the entirety and that it then descended under the statute of descents one-half to plaintiff as widow and one-half to his collateral heirs of which defendant was one. Defendant frankly admits that she believed she owned an undivided one-eighteenth of said land; that she sold same and received the money therefor in good faith and made her deed to convey that interest. To say otherwise would be to convict her of bad faith and intentional fraud.

It is no longer an open question in this State that, when one person sells land or a definite interest therein

to another and each party acts under the assumption and mistaken belief that the vendor has the interest and title he bargains to sell and for which he receives the money but that such is not the fact, then the money has been paid under a mutual mistake of fact and may be recovered. [Griffith v. Townley, 69 Mo. 13; Clark v. Carter, 234 Mo. 90.] In the Griffith case the purchaser brought land at an administrator's sale and the evidence showed that both parties believed that such sale was of the full title to the land. The court said: "If this was the belief of both parties, then it follows that Townley did not by his purchase procure the fee as he intended, and as Welton intended he should, then it is a case of mutual mistake: one of so fundamental a character as appeals very strongly for equitable interposition. . . . Where there was a mutual mistake of parties as to the interest of the vendor in the land sold, the court of appeals of Virginia held that the sale should be set aside. [Irick v. Fulton's Extrs., 3 Gratt. 193.] And this, notwithstanding the whole matter arose from a mutual misconstruction of a deed and a will, and equitable relief was asked solely on the ground that the vendor and vendee both believed that the former only had an undivided interest in the land sold, when in truth she possessed the fee." In Clark v. Carter, supra, the plaintiff purchased land of an executor each intending to pass a good title in fee and each believing the executor had power to convey the fee. The court there said: "It was not only a question of knowledge, but the result of the transaction was different from what both of them mutually intended that it should be; and that result was the direct result of their mutual mistake of fact, namely, that the executrix had the authority under the will to sell the remainder in fee, when in fact she had no such power. . . . In the recent case of Livingston v. Murphy, 187 Mass. 315, after a careful consideration of this question, the Supreme Court of Massachusetts held that a mistake as to the ownership of land is a mistake of fact in regard to which equity will grant relief, although the mistake

arose from an erroneous view of the legal effect of a deed." This same principle s expressed in 20 Ency. of Law (2 Ed.), 814, thus: "The existence of a subject-matter being essential to every contract, it follows that the mistake of the parties in supposing something to exist which does not exist invalidates any contract in respect thereto, except, of course, where the uncertainty of the existence of the thing is the very essence of the agreement. . . . If after a contract for the sale of real property, it turns out by operation of some settled principle of law of which both parties were alike ignorant, the party who contracted to sell had in fact no title to the land, . . . in all these cases the contract is voidable." Further at page 819: "So if the real owner of property, in ignorance of his title, purchases it from the supposed owner, equity will grant relief by decreeing a restitution of the purchase money or cancelling a bond executed therefor; or, if the contract is still executory, by denying its specific performance and ordering its cancellation."

Defendant lays much stress on plaintiff's negligence in not investigating the title and then representing as administratrix by the inventory that the land belonged to the husband's estate. The evidence is that she never saw the deed conveying the property to her and her husband and had no knowledge of the title further than that her husband bought and owned the land. While the statute makes it the duty of the administrator to examine the deceased's title papers, a failure to do so is no more than negligence—shared in this case equally at least with defendant's brother as co-administrator and whose interest like defendant was adverse to plaintiff. The authorities are numerous that, though plaintiff's mistake is due to negligence, yet when the mistake under which the money is paid is *mutual,* as it is here, such negligence in no way bars the recovery. In the leading case of Koontz v. Central National Bank, 51 Mo. 275, where plaintiff paid a draft drawn on another party without looking at it, the defendant having inadvertently presented it to plaintiff,

the court said: "This is a case of mutual mistake, and it makes no difference that plaintiff when she paid the draft, had the means of knowing, and might by diligence and care have avoided the payment. It is held that it is no bar to an action, that the party paying had the means of knowing, and might have availed himself of those means by care and attention, and thus have arrived at exact knowledge. . . . If the money is paid under the impression of the truth of a fact which is untrue, it may, generally speaking, be recovered back, however careless the party paying had been in omitting to use due diligence to inquire into the facts." It should be noted, too, that in the above case the defendant, collecting bank, had paid over the money collected to the drawer of the draft and as a result of the negligent mistake of the plaintiff in paying another's obligation the defendant was compelled to be loser because the mistake was mutual. In Nordyke & Marmon Co. v. Kehlor, 155 Mo. 643, 654, 56 S. W. 287, the court said: "They were both mistaken, and the contract which they intended to establish on that foundation falls when the foundation itself is discovered to have no existence. And in such case it is immaterial that the party pleading the mutual mistake was negligent in seeking information." In answering the defendant's contention here as there, that plaintiff is the party who furnished by the inventory and otherwise the false information as to the ownership of the land on which the parties acted, the court further held (quoting from the syllabi): "In such case it is immaterial whether plaintiff or defendant furnished the mistaken information upon which the condition was predicated; the contract showing that it was assumed as a fact and was adopted by both plaintiff and defendant as the sole standard by which the performance of the condition was to be determined." In Mason v. Commerce Trust Co., 192 Mo. App. 528, 183 S. W. 707, the plaintiff had paid to a collecting bank certain interest coupons which he did not owe. In a suit to recover same the court said: "There is no question but that the defend-

ant bank was not the owner of the coupon but was merely an agent in collecting them and that it has paid the money collected over to the Kansas bank, and did so in good faith before it had any notice of there being any mistake. This, however, would make no difference if the mistake were *mutual*, that is, if the defendant bank had made a mistake as well as plaintiff; and this would be true regardless of plaintiff's lack of care or prudence in failing to see that they were not coupons he was required to pay. But, so far as anything the defendant bank *itself* did, it made no mistake, since it merely obeyed directions in notifying plantiff and had no means of ascertaining that the coupons were not the ones plaintiff was obligated to pay. The mistake of *one* party to a contract will not entitle him to relief, in an action at law, unless it appears that his mistake was produced by fraud, or misconduct amounting to fraud, on the part of one who did not make the mistake."

The principle there adopted is that in order to make a mere agent personally liable for the return of money collected by mistake, the mistake must be both mutual and *personal* to the agent. The fact is also there stressed that the innocent agent had, without notice of the mistake, paid over the money collected to his principal and if compelled to pay same back to plaintiffs would be the loser. The court does not say, but strongly intimates, that, though the mistake was unilateral as to the agent, yet if the agent yet had the money on hand or had paid it to the principal after receiving notice of the mistake the plaintiff could recover even on such unilateral mistake. This is in accordance with the rule stated in Koontz v. Bank, 51 Mo. 275, 277: "The general rule undoubtedly is, that if a party, who pays money to an agent for the use of his principal, becomes entitled to recall it, he may, upon notice to the agent, recall it, provided the agent has not paid it over to the principal, and also provided no change has taken place in the situation of the agent since the pay-ment to him, before such notice." Since, as we have seen, it makes no difference as to the degree of negli-

gence of the parties or the culpability of the mistake, provided the same is *mutual,* in determining the right to plaintiff's recovery; nor indeed to the fact that the least innocent may have to suffer the loss (Koontz v. Bank, supra; Mathews v. City of Kansas, 80 Mo. 231, 235), where the court said: "In the instance of a mutual mistake the party paying thereunder may ordinarily recover without regard to the special equities involved as to where the loss will fall. In such case it is mainly a question of fact. The inquiry is, were both parties in error as to the real facts, and did both act thereon?"), it would seem that it is only in case of a unilateral mistake that the *equities* of the parties become a contributing factor. In the Mathews case, supra, the court, commenting on Myer v. Mayor, 63 N. Y. 455, said: "The learned Judge who delivered the opinion seems to have treated the case as if the mistake was that of *plaintiff alone,* and, therefore, as it did not appear that the city had altered its condition in consequence of the payment on lot 27 instead of 28, and would, perhaps, suffer no loss by making restitution, it was a proper condition of affairs for the application of the rule that the loss should fall on him who first occasioned the mistake." While not necessary to a decision of this case since the mistake here was mutual, it would seem just that, where money is paid by mistake of the payor and the recipient has no equities in his favor but seeks to retain that to which he is clearly not entitled, then he should be made to return it, though the only mistake on his part was the reception of money to which he was not entitled under the mistaken belief that he was so entitled. [22 Ency. Law (2 Ed.), 621.] "The cases founded on mistake seem to rest on this principle; that if parties, believing that a certain state of things exists, come to an agreement with such belief for its basis, on discovering their mutual error, they are remitted to their original rights." [Third National Bank v. Allen, 59 Mo. 310, 313.]

In this connection we will say that defendant's belief that she owned an interest in this land was not

brought about by any word or act of the plaintiff. The defendant admits that before the inventory was filed she believed, as did the plaintiff and all the family, that the husband and brother owned the land in fee instead of by the entirety. The making of an inventory of the real estate is rather for the benefit of the creditors than the heirs, since the administration has nothing to do with the real estate except as it becomes necessary to pay debts. [Langston v. Canterbury, 173 Mo. 122, 132, 73 S. W. 151.] The fact of listing this land on the inventory of decedent's estate affected in no way either the defendant's real right to an estate therein nor her belief as to same—not deciding, however, that such fact is at all important here.

Nothing is suggested by way of estoppel against plaintiff except that, after plaintiff received the money for her supposed interest, she bought an automobile and spent it in a way that makes it a hardship for her to have to return it. Where the mistake is mutual, as we have seen, the absolute loss of it to defendant would not be a defense and certainly the manner of spending it for her own use cannot be a defense.

Nor do we think that there is any substance underlying the argument that the sale of this land was a part of a "family settlement." That the sale of the land occurred on the same day that the widow and heirs arranged for the distribution in kind of the personalty belonging to the estate, was a mere coincident rather than being an essential fact of one transaction. And the same is true of the fact that on that day the widow agreed to and did relinquish by quit-claim deed her homestead right in the town tract of land for $1,000. There was no dispute—nothing compromised—as to the real rights of any of the parties as to these matters. What interest each party had or supposed they had as to all these matters was conceded by all. The principal point of discussion was as to plaintiff's right to a homestead in addition to one-half interest in the land. On this point defendant's sister, equally interested with her, testified: "Yes, we were satisfied with it under the

law as we were told what the law gave each one. We weren't satisfied with the law, but we were satisfied under the law as we understood the law, as Mr. Patterson (attorney for the estate) advised about it. Yes, sir; we made a division of the property, real and personal, that belonged to the estate among us, but we didn't exactly agree that day and take that part that had been agreed upon. Yes, we made deeds and accepted the money, and the bank stock and mining stock etc. In that sense we agreed to it, yes, sir. Some of us wasn't satisfied and thought the law gave her too much. We didn't think the law should give her this homestead." The defendant testified: "When I objected to and made my protest against the widow's homestead in this property in addition to half of it, Mr. Patterson said it was allowed her. He said we would just have to let her have it. He said that was the law and he got the law and read it to us. I didn't know anything about the law and we had to give it up that way. As to whether I was satisfied with what I got out of the estate, I had to be. I thought it was all I could get. I supposed it was all I could do. I had to be satisfied when they told us she got it. . . . . Yes, sir; I was acting in good faith in every transaction I had there that day and when I made the quit-claim deed to Mrs. Picotte. Yes, sir; I was under the impression at the time that the heirs had one-half interest in the 80 acres of land." The attorney for the estate, Mr. Patterson, who was acting for all parties, testified: "The question was discussed. The defendant was present. This was at the time the final receipts were drawn and the checks were drawn and the deeds signed by all the parties. The matter was fully discussed in regard to the terms on which this property was to be purchased, and by all the parties in interest that were there. The defendant was paid for her interest in that 80 acres. She got in that sale one-ninth of one-half of that $8000 consideration for the 80-acre farm, the price that was fixed in valuation for it, being $444.44."

The binding force of family settlements, like other settlements, is based on the fact of a compromise—a yielding of some real or *bona fide* claim. This question was considered in the recent case of Krahn-Freckheimer Company v. Palmer, not yet reported. [See, also, Faust's Administratrix v. Birner, 30 Mo. 414,418.] So far as this land was concerned there was no dispute or conflict of claim as to the supposed interest of the parties. The price to be paid by plaintiff for defendant's supposed interest was the only thing discussed and that is not now in dispute. [20 Ency. Law (2 Ed.), 815, 819; Davis v. King, 28 N. Y. Supp. 1026, 1029.]

The defendant asserts that the quit-claim deed alone determines the rights of the parties and that as there are no covenants of warranty the plaintiff assumed the risk of title. It is a sufficient answer to this that in the case of Clark v. Carter, 234 Mo. 90 and Griffith v. Townley, 69 Mo. 13. the purchaser took executor's or administrator's deeds without covenants of warranty and the doctrine of *caveat emptor* is more strictly implied in such sales than as between individuals. The court, however, set aside such sales as being based on mistake; and in the Clark case allowed the purchaser to recover back the money paid because of mutual mistake as to the title bought and sold. Land can only be conveyed by deed, and, if the purchaser can in any case recover back the purchase price paid because of mutual mistake, the deed must to that extent be avoided or disregarded and mutual mistake like fraud affords a basis for so doing. The doctrine that the grantee of a quit-claim deed takes with notice of preexisting equities or infirmities of title has no application to this case. The judgment of the trial court will therefore be affirmed. *Farrington* and *Bradley, JJ.,* concur.