FAUST'S ADMINISTRATRIX, Defendant in Error, v. BIRNER *et al.*, Plaintiffs in Error.

1. The words "dying without issue" must, in this state, since the revised code of 1845 went into effect, be construed to mean dying without issue living at the death of the person named as ancestor.

2. A testator made a bequest as follows : " I direct that if my wife M. should have a child by me, that such child shall have and receive of my estate the sum of two hundred dollars," &c. After making another specific devise, he proceeded as follows : " I give and bequeath to my wife M. all the residue of my estate, real and personal, for and during her natural lifetime," with remainder over. The wife at the death of the testator was pregnant with a child, which was afterwards still-born. *Held,* that the bequest of the two hundred dollars was not a lapsed legacy, but was embraced in the devise to the wife.

3. The doctrine, that if a party, acting in ignorance of a plain and settled principle of law, is induced to give up a portion of his indisputable property to another under the name of a compromise, a court of equity will grant him relief, is to be understood with many qualifications; family compromises upon doubted, if not doubtful, rights and mutual claims and mutual ignorance of the law, are generally sustained by the courts ; to authorize the courts to grant relief there should, it seems, be something more than mere ignorance of the law; there should be imposition or undue influence.

*Error to Cole Circuit Court.*

John Birner died in 1845, leaving a will, dated September 1, 1845, of which the provisions are as follows: " First, I direct that all my debts, &c.; second, I direct that if my wife Margaretta should have a child by me, that such child shall have and receive of my estate the sum of two hundred dollars out of my estate, to be paid to such child on arriving at age. I direct the said sum shall remain a charge on my real estate until said child arrives at the age of twelve years, at which time I further direct said sum to be raised from my real estate, and the same to be loaned out at interest for the benefit of my child; thirdly, in consideration that my brother Andreas Birner advanced a part of the money with which I purchased the farm where I now live, I give and bequeath to my said brother forty acres of land of said farm in full discharge of all sums of money due by me, which

may be allotted to him at any time after my death; fourth, I give and bequeath to my wife Margaretta all the residue of my estate, real and personal, for and during her natural lifetime, and after her death, without other issue than the above referred to, then to my said child; but if my said wife should again marry and have other children, then I direct that the property lastly above bequeathed shall be equally divided between my child and the children of my wife, the issue of such second marriage; or if my wife should die without issue, then I direct that all my property shall be equally divided between my two brothers Andreas Birner and George Birner, except the forty acres of land first given to my brother Andreas; lastly, I appoint my wife executrix," &c.

The child with which said Margaretta was pregnant at the death of her said husband was not born alive. The said Margaretta afterwards married John B. Faust, by whom she had three children. Faust has since died. This suit is brought by the said Margaretta, as administratrix, to recover back a sum of money paid by plaintiff's intestate to the defendants, Andreas and George Birner, the brothers of plaintiff's first husband, under the following circumstances as set forth in plaintiff's petition. The petition sets forth the provisions of the above will; that plaintiff intermarried with Faust; that Faust was a foreigner by birth and did not understand the English language well, and was ignorant and unacquainted with the nature of land titles in this state; that defendants falsely and fraudulently represented to him that they had a title to an interest in said lands; that he, relying on their representations and intimidated by their threats, was induced, in 1853, to pay to defendants the sum of $320 for their pretended title to said land; that they at the same time made to said Faust a warranty deed to the same; that defendants never owned said land or had any interest therein, and never had possession; that the title from defendants to said Faust has wholly failed.

Evidence was adduced to show that a dispute arose between said Faust and the defendants as to the interests con-

ferred by said will of John Birner, the defendants claiming an interest and threatening to turn Faust out of possession in case of Mrs. Faust's death. In 1853 the said Faust paid to defendants $320 by way of compromise of their claims upon the land, and the defendants executed a deed granting the land to said Faust. At the date of this deed Mrs. Faust had one child by said Faust.

The court, at the instance of plaintiff, gave the jury the following instruction: " 1. If the jury are satisfied from the evidence that Mrs. Faust had one child living by her second marriage at the time of the execution of the deed read in evidence, by a plain and settled principle of law the defendants had no interest in the land in question under the will; and if Faust, acting in ignorance of this plain and settled principle of law, was induced by defendants to pay them the amount mentioned in the petition as therein stated, they must find for the plaintiff."

The defendants asked various instructions, some of which were given, and some refused. It is deemed unnecessary to set them forth.

*Parsons*, for plaintiff in error.

I. The court should have sustained the demurrer. If the title of the heirs of Faust had failed, the action on the covenant of warranty descended to the heirs and not to the administratrix. (1 Chitt. Plead. 16.) No specific threats against the person, property or character of Faust were charged. The plaintiff does not, in asking for the purchase money, propose to rescind the deed of conveyance. The instruction given should have been refused. If the parties acted in ignorance and for the purpose of adjusting their difficulties, without fraud, misrepresentation or duress, to induce the acceptance of the terms of the compromise, it was valid and binding in law and equity. The defendants had an interest in the land. There was a lapsed legacy, which descended to the defendants as heirs at law. (4 Kent, Com. 541, 542.) Had Mrs. Faust at any time died without

leaving a child or children, the whole estate would have become vested in the defendants. They had therefore a contingent interest. The court should have given the instructions asked by the defendants. If the parties compromised their conflicting claims, neither law nor equity will interfere, although it might appear that one of their claims was groundless. (Lowber v. Selden, 11 How. Prac. 526.)

*White & Gardenhire*, for defendants in error.

I. Omissions of the petition, if any, are cured by the verdict. (1 Chitt. Plead. 673.) The plaintiff had a right to sue. (3 Mo. 401.) The grantors having no title, the covenant was broken as soon as made. (Collier v. Gamble, 10 Mo. 467.) The heirs acquired nothing by the deed. The grantors had no title to convey. If a party, acting in ignorance of a plain and settled principle of law, is induced to give up a portion of his indisputable property to another under the name of a compromise, he will be relieved from the effect of his mistake. (1 Sto. Eq. § 121.) The jury have so found. The judgment is for the right party. The covenant being personal, and having been broken when made, the defendants had the right to recover back the purchase money with interest. The case was not put upon this ground in the court below, but it might have been. There was no lapsed legacy.

NAPTON, Judge, delivered the opinion of the court.

In this case we have not been able to perceive, as the court declared in the instructions to the jury, that " by a plain and settled principle of law the defendants (G. and A. Birner) had no interest in the land in question under the will" of their brother, at the date of the compromise. The will of John Birner, as we understand it, devised the entire estate to his wife, for life, with remainder to her children, and then provided that if his wife should die without issue, all his property should be divided between his two brothers. This is a good executory devise to the brothers. Our statute

provides that the words " dying without issue" shall not be construed to mean an indefinite failure of issue, but that they shall be construed to mean dying without issue living at the death of the first taker. The contingency is not therefore too remote, for it must be determined at the death of the wife.

If the instruction had reference to a supposed interest of the brothers in the legacy provided by the testator for the child of which his wife was then pregnant, we concur with the circuit judge in his construction of the will. This provision was contingent, and it was the intention of the testator, if the contingency never happened, by the fourth clause of the will, to dispose of his entire estate, except the forty acres of land devised to his brother in the preceding clause. When the testator, therefore, spoke of the *residue* of his estate in the fourth clause of his will, he intended to include the legacy provided for his expected child, if such expectations failed. There was, therefore, no lapsed legacy by reason of the testator's child not being born alive.

The instruction appears to be based on the doctrine stated by Judge Story, in his Treatise on Equity, that " if a party, acting in ignorance of a plain and settled principle of law, is induced to give up a portion of his indisputable property to another, under the name of a compromise, a court of equity will relieve him from the effect of his mistake." (1 Story, Eq. § 121.)

This principle is laid down by Judge Story with great caution and with many qualifications, as an examination of succeeding sections of the chapter where it occurs will show. Indeed, in the same section, the commentator adds, " that where a doubtful question arises respecting the true construction of a will, a different rule prevails, and a compromise fairly entered into, with due deliberation, will be upheld in a court of equity."

But what is a plain and settled principle of law ? Is it meant such rules as a long series of judicial decisions or statutory provisions have fixed, and which are understood by

the community at large, as well as by the profession whose business it is to investigate such subjects? If so, how can it apply to the construction of this will? There was undoubtedly a controversy among the parties in relation to its construction, and it was not their understanding, we may infer, that the true construction was plain or settled. When a will is construed by an authoritative decision, it is settled undoubtedly, and the construction was law just as well before the decision as after; for it is not the province of courts to make but declare the law; but in this sense all principles of law may be said to be plain and settled, and litigated cases could never be compromised. When we look at the cases to which Judge Story refers, in illustration of this doctrine, we see that there is generally something more than a mere ignorance of the law; that the circumstances lead to suspicions of fraud, imposition, misrepresentation, or undue influence on one side, and imbecility, credulity or blind confidence on the other. Take the first case mentioned, that of a first-born son in England dividing his estate with a younger brother, in ignorance of the law of primogeniture. Every tolerably well-informed person in England may be presumed to know that the fee simple estates of the ancestor descend to the eldest son; and, if a contract is made in ignorance of this "plain and settled principle of law," a court may well infer that there must be either fraud or imbecility. But how different is that case from the present! Here is a will, concerning the meaning of which parties interested differ, lawyers consulted differ, and the courts do not altogether agree, as it turns out. A claim is set up on one side and bought out by the other, and because the opinion of the courts may be that the claim had no valid foundation, is it the law that the contract must be set aside and the purchase money returned? The case of Bingham v. Bingham, 1 Ves. 126, is not unlike this, but the report of this case is thought to be meagre, and its authority, as reported, is questioned. (See 1 Story, Eq. § 129.) Family compromises upon doubted, if not doubtful, rights and mu-

tual claims and mutual ignorance of the law, are generally sustained by the courts.

The instruction of the court was then, in our opinion, erroneous. But we will not be understood, in disapproving the instruction on which the case went to the jury, as deciding that the plaintiff was not entitled to recover. There may have been gross ignorance and imbecility on one side, and a perfect knowledge of the facts and the law on the other; there may have been imposition or undue influence; there may have been circumstances from which a jury might infer fraud. All these things are charged, but the allegations were not tried. The case turned altogether upon another point. We shall remand the case for a new trial.

Judgment reversed and case remanded. The other judges concur.