### K. R. BARNUM, Appellant, v. SARAH L. BARNUM et al., Respondents.

**Kansas City Court of Appeals, January 19, 1914.**

1. **SALES: Contracts: Partnership Estate: Mutual Mistake.** A mutual mistake as to the title of the vendor in the subject of a sale may consist partly of ignorance of the facts and partly of ignorance of the law in which event equity would not refuse relief to the injured party. But where there is no mutual mistake either as to fact or law, but there was a mutual attempt to avoid compliance with the law requiring an administration of the partnership estate and also of the individual estate of the deceased partner, equity will not afford relief, because the plaintiff does not come into equity with clean hands.

2. **Administration: Surviving Partner: Statute.** Under Sec. 88, R. S. 1909, the primary duty devolves on the surviving partner to administer the partnership estate.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

AFFIRMED.

*Montgomery & Montgomery* for appellant.

*Hoffman & Hoffman* and *G. W. Barnett* for respondents.

JOHNSON, J.—This is an action in equity begun in the circuit court of Pettis county, September 12, 1912, against the defendant Sarah L. Barnum, to rescind a contract for the sale of personal property. Before trial the court, over the objection of plaintiff, sustained a motion of defendant that she be made a party in her representative capacities of administratrix of her deceased husband's estate and of guardian and curatrix of the persons and estates of their two minor children. After hearing the evidence the court rendered judgment dismissing plaintiff's bill for want of equity. Plaintiff appealed.

The petition alleges that the contract sought to be rescinded ''was entered into either by a mutual mistake of the parties in relation to their rights in and to said property or by the wrongful and fraudulent pretense and representations of the defendant that she was the owner thereof and had a right to sell and convey the same and the plaintiff being ignorant of his rights and wholly mistaken in regard thereto and relying upon said fraudulent pretense and representation, was led and induced thereby to enter into said contract. That the defendant did not have any right nor title to said property nor any right or power to sell and convey the same.''

Plaintiff and his brother, Harold, were practicing medicine in partnership in Sedalia at the time of the death of Harold which occurred August 30, 1910. Their office furniture, instruments and medicines belonged to the partnership; they owned a horse and buggy and had outstanding accounts of the estimated value of $7200. Harold was survived by his widow—the defendant—and their two minor children. He died

intestate and his estate consisted of a half interest in the partnership property and some household goods. Under date of September 5, 1910, plaintiff and defendant entered into a written agreement in which the value of the interest of the deceased partner in the partnership estate was placed at $3600, and defendant undertook to sell and convey that interest to plaintiff for the consideration of $3600, payable in monthly installments of $100 each for the first year and fifty dollars each thereafter.

We find from the evidence, as we infer the trial court did, that the parties agreed to dispense with the administration of either the partnership or individual estates. Plaintiff expressed a desire to avoid an administration because of the injury his practice might suffer from a vigorous effort to enforce speedy collection of outstanding accounts. It was agreed that defendant, who was being advised and assisted in the transaction by her brother and a Texas lawyer who was in Sedalia on a visit, should apply to the probate court for an order refusing letters of administration on the individual estate and the contract of sale was not entered into until after such order was obtained. This order, which was entered of record September 6, 1910, provided that "to the end, therefore, that the said Sarah L. Barnum, as such widow, may be authorized and empowered to collect, sue for and retain said property as her absolute property, as provided by law, it is ordered that letters of administration on said estate be refused unless on the application of creditors or other parties interested, the existence of other or further property be shown." Relative to the making of this order, the probate judge testified: "Mrs. Barnum and U. F. Short, her attorney, and her brother came into the probate court, and Mr. Short speaking for her stated that they wanted to make application for the refusal of letters. I prepared an application for appointment as administrator, which

Mrs. Barnum signed, and I asked her if Dr. Barnum had left any real estate. She said, 'no,' the home was in her name. And then I asked her how about her personal property—the office business. And Mr. Short, in Mrs. Barnum's presence told me that that had all been adjusted between the surviving member of the firm, and that the partnership estate was practically settled. And knowing Mrs. Barnum, as I did, I refused letters of administration upon the strength of that statement.

"Q. What, if anything, was said about the extent of the property of Dr. Barnum? A. Nothing at all, sir, except he had no real estate.

"Q. Nothing was said as to the extent of the personal property? A. Nothing was said as to the extent of the personal property except that the question between Dr. H. L. and Dr. K. R. Barnum was settled; the partnership matter was settled; I inquired into that and was so informed by Mr. Short.

"Q. Did they say anything about a contract? A. No, sir; they said the matters between the two doctors were settled.

"Q. Was it explained to you the amount that was to be paid to Mrs. Barnum upon that settlement? A. No, sir; I didn't ask that; I knew nothing about a contract at all, Mr. Montgomery, and didn't inquire.

"Q. Did you know that thirty-six hundred dollars was to be paid her? A. No, sir; I knew nothing about it. I considered that Dr. K. R. Barnum and Mrs. Barnum were thoroughly competent to settle their affairs, and believed that any statement made to me by Mrs. Barnum was true."

Pursuant to the contract of sale made in the manner described, plaintiff continued in the possession of the partnership property, used it as his own and made collections of outstanding accounts. For fifteen months he paid the installment notes he gave to defendant as they matured, paying in all $1350 on the

purchase price of his deceased partner's interest and then he quit paying and on March 2, 1912, notified defendant through his attorney of his purpose to rescind the contract on the ground that defendant had no title to the property and, therefore, had conveyed none to him. Defendant, in the meantime, had removed to California and further steps were delayed until she could find it convenient to return to Sedalia to adjust the matter, except that on March 14, 1912, plaintiff, on his application, was appointed administrator of the partnership estate. On July 29, 1912, he applied, as such administrator to the probate court for an order to set aside the order refusing letters of administration to defendant "and that the administratrix be required to qualify as by statute in such cases made and provided or another administrator be appointed." In this application which was sustained by the court, plaintiff alleged "that the said estate of Dr. H. L. Barnum is worth about $2000, that being the value of his interest in said copartnership estate, and that the administrator (plaintiff) has already paid and advanced from said copartnership estate to said widow the sum of $1350, which she has received of him in cash."

The probate court set aside the order refusing letters to defendant and on July 29, 1912, issued letters to her and she qualified as administratrix of her husband's estate. She also was appointed guardian and curatrix of the persons and estates of the minor children and after being made a party to this action in her representative capacity she answered claiming and attempting to exercise the right to ratify the contract and to receive and hold its proceeds as administratrix.

There are no creditors of either estate. After the probate court made the order refusing letters of administration to defendant she paid all the debts of her husband's estate, amounting to $865.

The evidence of plaintiff tends to support his contention that the interest of the deceased partner in the partnership property at actual value did not exceed $2000, while the contradictory evidence of defendant shows a value equal to that which the contract of sale required plaintiff to pay.

It is argued by counsel for plaintiff that the contract of sale was the product of a mutual mistake of the parties—a mistake of law and fact which a court of equity will not refuse to rectify. And further that defendant cannot justify the sale "by the order of the probate court of September 6, 1910, refusing letters, which order was fraudulently procured by her and was set aside for fraud before the action was brought. The vendor cannot thus obtain the benefit of her own fraud by an order procured by her own fraud." [Citing 1 Freeman on Judgments, sec. 355; Harrigan v. Gilchrist, 99 N. W. 954; Pomeroy's Equity, 404; Kitchen v. Rayburn, 19 Wall. 1. c. 263.]

Of course one fraud cannot serve to justify another, but we fail to perceive any ground on which it may be inferred that defendant practiced any fraud either upon plaintiff or the court, nor do we find any better ground for the position that the contract of sale was the result of mutual mistake as that term is understood in equity. There is a radical difference between the facts before us and those in the cases of Clark v. Carter, 234 Mo. 90, and Griffith v. Townley, 69 Mo. 13, much relied upon by plaintiff as upholding his contention of mutual mistake. Those cases recognize the principle that ignorance of the fact excuses, while ignorance of the law which everyone is presumed to know, excuses not, and go no further than to hold that a mutual mistake as to the title of the vendor in the subject of the sale may consist, as it did in those cases, partly of ignorance of the facts and partly of ignorance of the law in which event equity would not refuse relief to the injured party. In the case in hand there

was no mutual mistake either as to fact or law but there was a mutual attempt to avoid compliance with the law requiring an administration of the partnership estate and also of the individual estate of the deceased partner.

Under section 88, Revised Statutes 1909, the primary duty devolved on plaintiff as the surviving partner to administer the partnership estate. Instead of discharging that duty, he sought to evade it by entering into the contract in suit. He will not be heard to say that he was ignorant of this duty. It was his business to know it, and he must be held to the position of having knowingly and purposely joined with defendant in an attempted evasion of the law which would make it possible for plaintiff to convert the property of his deceased brother's estate to his own use. Thus it appears that at the very threshold of the case plaintiff is met by an insuperable obstacle. He does not come into a court of equity with clean hands but needs must exhibit his own wrongful participation in acts of his opponent he now denounces as unlawful and even fraudulent. Moreover, he knew that in order to give a semblance of legality to the proposed sale defendant had to obtain an order of court refusing letters for the administration of the individual estate and vesting the absolute title to the deceased partner's estate in her as his widow and he waited until after such an order was made before he entered into the contract of sale.

Instead of innocence and equity in the position of plaintiff we find at every turn active wrongdoing to serve some selfish purpose. His solicitude for his dead brother's orphans would be better regarded if it were not coupled with a selfish end. Just how plaintiff proposes to benefit these orphans by using their property two years and then buying it or selling it to another for about half the value he agreed to pay for it is not apparent. We do not believe defendant had any

thought of wronging her children but whether she had
or not is immaterial. Their interests are and will be
well protected and certainly it will be to their advan-
tage to have enforced the contract plaintiff would
have rescinded.

We rule that plaintiff must lose since he does not
come into a court of equity with clean hands.

The judgment is affirmed. All concur.