THE FIRST NATIONAL BANK OF KANSAS CITY, ET AL., PLAINTIFFS-RESPONDENTS, v. MATHILDA C. SCHAAKE, ET AL., MRS. ELIZABETH PFEIFFER, ET AL., DEFENDANTS-APPELLANTS.—203 S. W. (2d) 611.

Kansas City Court of Appeals. Opinion delivered June 16, 1947.

218

*William G. Boatright* for Appellants.

*Walter C. Walker* for Plaintiffs-Respondents. *F. D. Glore* for Defendants-Respondents.

CAVE, P. J.—This appeal was first granted to the Supreme Court, but that court held that it did not have jurisdiction because the title to real estate was not directly involved; and that the record did not affirmatively show that the net value of testator's estate was in excess of $7500. Whereupon the cause was transferred to this court. (See The First National Bank of Kansas City v. Mathilda C. Schaake, et al., 200 S. W. (2d) 326.)

The executors and trustee, The First National Bank, under the will of John Schaake, brought an action in the circuit court of Jackson County to have that court construe the will of John Schaake and to make an election whether it would be for the best interest of the testor's insane widow, Mathilda C. Schaake, to renounce the provisions of his will in regard to property bequeathed her, or to take one-half of his estate under the statutes of this state, since neither the testator nor his widow had any children. The trial court construed the will to devise to the widow only her dower interest, or a one-third interest for life, and not an absolute one-half interest in his estate, subject to debts; and also determined it was for her best interest

to renounce the will and elected for her to take one-half of testator's estate, subject to his debts. The Alien Property Custodian of the United States has duly appealed from this decree on behalf of the five brothers and sisters of the testator, who are residents of Germany.

John Schaake died testate on September 5, 1943, leaving his widow, Mathilda C. Schaake; she had been adjudged to be a person of unsound mind in March, 1943, and Mildred Riordan was appointed her guardian and curator. Item two of his will provides: "I give and bequeath to my beloved wife, Mathilda C. Schaake, all that part of my estate to which she shall be rightfully entitled under and by virtue of the laws of descent and distribution of the state of Missouri". Item three gives sums of money to various religious and charitable institutions; item four devises various sums to his wife's relatives, in the event he survived her; item five devised and bequeathed the residuary estate to his widow, Mathilda C. Schaake, and The First National Bank of Kansas City, Missouri, as trustees for the testator's brothers and sisters and their heirs per stirpes. Five of his brothers and sisters reside in Germany and the Alien Property Custodian of the United States took all steps necessary, properly and legally, to represent said brothers and sisters.

The parties seem to concede that the trial court correctly ruled that under the will of John Schaake his widow was not entitled to an absolute one-half of his estate, but rather was entitled only to dower interest in the real estate. [They cite Secs. 306, 318, 325, 327 and 329, R. S. Mo. 1929; White v. Greenway, 274 S. W. 486; Lee's Summit Building & Loan Ass'n v. Cross, 345 Mo. 501, 134 S. W. (2d) 19; Klocke v. Klocke, 276 Mo. 572; McLain v. Mercantile Trust Co., 292 Mo. 114; Ross v. First Presbyterian Church, 272 Mo. 96; Brown v. Brown, 347 Mo. 45, 146 S. W. (2d) 553; Colvin v. Hutchinson, 338 Mo. 576, 92 S. W. (2d) 667; Landis v. Hawkins, 234 S. W. 827.]

We shall discuss this question later, particularly with reference to her interest in the *personal estate*.

The basic cause of this controversy is the fact that the guardian of Mrs. Schaake did not elect to renounce the will within the twelve months' period allowed by Sec. 329, and to take a one-half interest in the real and personal estate of the deceased, subject to payment of his debts, as provided by Item *second* of Sec. 325. · Appellant contends that the guardian's failure to make such an election within the twelve months' period forever forecloses that right to the insane widow and leaves courts of equity without jurisdiction and authority to make such an election for her. Respondents contend that since Mrs. Schaake was insane at the time of her husband's death she was incapable of exercising her right of election and her guardian failed to do so for her and, under such circumstances, if it is for her best interest, a court of equity has jurisdiction and authority to make such an election even though the statutory time for making such an election has expired.

The guardian did not make an affirmative election because she received legal advice to the effect that *item two* of the testator's will devised to Mrs. Schaake one-half of the testator's estate and, acting on that advice, she omitted to file any renunciation of the will or election as to dower rights on behalf of her ward. More than *twelve months* after the will had been probated an attempt was made to sell certain of the real property in the estate and at that time the Kansas City Title and Trust Company objected to an attempted conveyance of one-half thereof on behalf of Mrs. Schaake, it being the opinion of the Title Company that Mrs. Schaake took only a one-third interest for life under item two of the will. After receiving the said Title Company's opinion, the executor and trustee filed this suit on August 25, 1945, almost two years after the will was probated.

Item two of the will devised to the widow the same rights and estate which the laws of descents and distributions give her. Under such circumstances she would take only *dower interest* in her husband's *real estate* as provided in Sec. 318, unless she duly elected to take a one-half interest therein, as provided in Sec. 325. We shall discuss later her interest in the husband's *personal estate*. To make an election to take one-half of the real estate under Sec. 325, it was necessary for her, under Secs. 327 and 329, to make an election in writing, properly acknowledged and filed in the office of the Clerk of the court in which letters testamentary shall be granted, and to file the same in the recorder's office of the county in which the administration is being had ''within twelve months after the first publication of the notice of granting the same.'' That section also provides that when any widow is entitled to the benefit of such an election shall be of unsound mind or is a minor, ''the lawful guardian of such persons may elect for his said ward, in the same manner and with like effect as said ward might do were she capable in law of so electing.''

Our courts have held that a court of equity can make an election for the insane widow, if the guardian fails to do so, or if the guardian makes an election which the court finds is not for the best interest of the ward. [In re Connor's Estate, 254 Mo. 65; Primeau v. Primeau, 317 Mo. 828, 297 S. W. 382; Manufacturers Bank & Trust Co. v. Kunda, 353 Mo. 870, 185 S. W. (2d) 13.] But the difficulty is, do those cases answer the vital point at issue in the instant case? We are concerned with the vexing question whether a court of equity can make such an election *in a suit filed after the time* (12 months) *has expired for the widow or the guardian to make the election.* A careful reading of the opinions in the Connor, Primeau and Kunda cases, supra, justifies the conclusion that the suits in those cases were filed *within* the 12 months' period. Therefore, the court acquired jurisdiction of the parties and of the subject matter before the time for election had passed, and the fact that the judgment of election was entered after the 12 months' period would be of no consequence.

In our opinion this specific question has never been decided by an Appellate Court of this state. Decisions by the courts of other states are of little aid because of differences in the statutes. Some do not authorize the guardian to make an election; therefore, the courts may do it. [See, Gaster v. Gaster, 90 Neb. 529, 534. See, also, 74 A. L. R. p. 461, n. 3, and 147 A. L. R. p. 343, n. 3.] The cases cited are in hopeless conflict.

Let us look to certain decisions of our own courts on related questions. In Ferguson v. Long et al., 341 Mo. 182, 107 S. W. (2d) 7, the Supreme Court, in construing what is now Sec. 329, said (188): "The statute is mandatory as to what shall be done in the matter of an alection, . . . and a court of equity cannot dispense with any of the requirements of the statute, excuse failure to comply therewith, or extend the time for filing specified by the statute. [Allen v. Hartnett, 116 Mo. 278, 287]." In that case the widow was sui juris and was acting for herself but had failed strictly to comply with the section, and the court denied her relief because the election had not been properly made within the statutory period.

Unlike other statutes creating periods in which action must be taken (such as Sec. 540 dealing with will contests), Sec. 329 does not provide any *exception* or *saving clause* for a widow of unsound mind; it specifically authorizes the guardian to act for such a person. It is the general rule in this state that a statute of limitations runs against all persons in the absence of a *specific saving clause* to the contrary. Thus, in De Hatre v. Edmunds, 200 Mo. 246, 98 S. W. 744, l. c. 752, it is stated:

" . . . it is sufficient to say that the statute makes no exceptions, and the settled rule is, in respect to the running of the statute of limitations, that the statute will run against all persons, 'and no exception to the statute can be claimed unless it is expressly mentioned in such statute'; and, 'where the statute makes no exception, the court can make none on the ground of inherent equity, or because it may appear to be reasonable that the statute should not run against any party in a given case.' Tyler on Ejectment, 928, 929, and cases cited; Angell on Lim. (6th Ed.) 203, and cases cited."

In Schweer v. Schweer, 86 S. W. (2d) 969, it is held that the statute allowing 12 months for a widow to make her election is a statute of limitations on the widow's right to elect.

Our courts have also stressed the necessity of expeditious closing of estates and the protection of the rights of creditors and purchasers from the estates; and have emphasized the necessity of widows making their elections within the statutory period. In Dougherty v. Barnes, 64 Mo. 159, l. c. 161, 162, the court held:

"While the statute by fixing the time at twelve months from probate of will does not precipitate or require a hurried decision,

it was evidently the purpose of the legislature to prescribe a limit to its exercise, and not to grant an indefinite period during which purchasers and creditors could acquire rights as sacred and just as the wife's, and which it would be inequitable to disturb. This view is sustained, when considered in connection with the fact that the writing is required to be signed and acknowledged, as in case of deeds for land, and filed in the office of the court in which the will is proved and recorded. The evident object of this is to protect creditors and purchasers by enabling them to inspect the instrument if it is filed, and if no such instrument is on file they can well act on the presumption that the provisions of the will have been accepted. The plaintiff cannot take both under the law and under the will, and in the absence of proof of fraud, chicanery or contrivance to induce plaintiff to acquiesce in the provisions of the will, or to refuse to accept its provisions, this court cannot interfere and allow that to be done in eight · years which the statute required to be done in one.''

If it be held that a court of equity can make an election for an insane widow in a suit which was filed one year· after the period of election has expired, then it could be done in a suit filed 10 or 20 years after the time expired. Such a proposition would leave the title to real estate in all such cases in a state of uncertainty and chaos. No purchaser could be certain of the validity of his title. We do not believe the law contemplates or will countenance any such uncertainty. The law gives the insane widow adequate protection when it provides that the guardian may make an election for her and if no election is made by the guardian, or if an election is made by the guardian, which is not to the best interest of the insane widow, then a court of equity, in a suit filed within the statutory period, may make an election which is for her best interest. Connor, Primeau and Kunda cases, supra.

We are unwilling to construe the opinion in the Connor case to mean that a court of equity can make an election for the insane widow so long as she ''is alive and requires its assistance'', as contended by plaintiff. The language in the Connor case, which seems to support plaintiffs' contention, is found at page 92, and is:

''The argument which excludes the heir is that the right of election does not survive the life of the elector. So long as the lunatic elector lives, the court, as guardian, is invested with the power of choice; but when the fountain dries up in death, all that has life in it dies also. In short, if no election is made by the widow during life when she is competent to act for herself, or by the court when she is not, the right is defeated in either case, the time and opportunity are past, and it never was intended that any election should be made after her death.''

The court was there quoting from a Pennsylvania case which was discussing the principle that the widow's kinsmen or heirs are entitled to no consideration in determining what is for her best interest. To emphasize that point, the court pointed out that the widow's right of election is personal to her, does not survive her death, and was never meant to accrue to the benefit of her heirs. When the quoted language is read in connection with the point under discussion, we do not believe that the Graves opinion means that the widow's right of election continues indefinitely throughout her lifetime, even after the time fixed by statute for the election.

There is no charge or hint of fraud or chicanery on the part of the guardian in failing to make the election within the proper time. She did not make it because of a *mistake of law*. A court of equity will not grant its extraordinary relief because of a *mere* mistake of law. Kleiman v. Gieselmann, 114 Mo. 437. In that case the court said (444-445):

"Granting that there was a mutual mistake between Mrs. Werk and Mrs. Gieselmann as to the interest acquired by the latter to the property under the will of her deceased husband and right to convey the same, as she intended to do, it was merely a mistake of law against which a court of equity will not grant relief. In the case of Dailey v. Jessup, 72 Mo. 145, this court says: 'It is unnecessary to cite authorities in support of the proposition that mere ignorance of the law on the part of a party to a contract will not authorize a court of equity to set aside the contract. There must be *something more*. The circumstances attending the making of the contract must be such as to excite 'suspicions of fraud, imposition, misrepresentations or undue influence on one side and imbecility, credulity or blind confidence on the other.' Faust's Adm'r v. Birner, 30 Mo. 414; Griffith v. Townley, 69 Mo. 13.' The present case is entirely free from fraud or deceit, and the evidence shows that the parties acted in the utmost good faith."

But plaintiffs argue that there is *something more* involved than a *mere* mistake of law; and call our attention to the fact that the guardian is a daughter of a brother of the deceased and, therefore, if the will stands he will inherit more than if the will is renounced. There is nothing in the record to indicate that the guardian was actuated by any such motive. There is no merit in this contention.

Since this is a suit in equity it is our duty to consider the case de novo, make our own finding of facts, and enter, or direct the entrance, of the judgment which should be rendered. The petition, among other things, prays the court to "declare and define the extent of the interest of defendant, Mathilda C. Schaake, incompetent, in the *assets* of the estate of John Schaake, deceased, pursuant to item two of said will."

Therefore, we shall consider what interest the insane widow has in the estate of her deceased husband. He died leaving personal property of the gross value of about $35,000, and certain real estate. Item two of the will gave the widow that property which she would be entitled to under the laws of descent and distribution. The effect of that provision is that the husband died intestate as to her. Under such circumstances, and since no election was or can be made for her at this time, she is entitled to dower interest in the real estate as provided by Sec. 318, which is a one-third interest for life; and to a one-half interest in the personal estate, subject to the payment of her husband's debts, as provided in Sec. 325. It was not necessary for her or her guardian to renounce the will and to elect to take a one-half interest in the *personal* estate, because that interest is given her without such an election. In re Dean's Estate, 350 Mo. 494, 166 S. W. (2d) 529; In re Estate of Opel v. Aurien, 352 Mo. 592, 179 S. W. (2d) 1; Nies Adm'rs v. Stone, 232 Mo. App. 1226, 117 S. W. (2d) 407. In the Opel case, *supra,* in discussing the question we now have under consideration, the court en banc said (598):

"This appeal was first lodged in Division Two of this court and appellant cited some early cases, particularly Bryant v. Christian, 58 Mo. 98, in support of his contention that a widow of a deceased husband who left no descendants cannot take one-half his personal property under Section 325 without filing an election under Sections 327 and 329. Since then this court en banc decided in In re Dean's Estate, 350 Mo. 494, 166 S. W. (2d) 529, that a widow under such circumstances is entitled to one-half her deceased husband's personalty, subject to his debts, without filing an election, and that she is not deprived of that right by contrary provisions in his will. We also held in that case that the holding in the Bryant case on this point was overruled in Klocke v. Klocke, 276 Mo. 572, 208 S. W. 825. Cases cited in the Dean case will show that our ruling there is in harmony with our decisions since the Bryant case and with many decisions of our courts of appeals."

Therefore, the trial court was in error in holding that the widow was not entitled to a one-half interest in the personal estate without first making an election to take under Sec. 325.

The judgment in this case should be: (a) That the court has no jurisdiction or authority to renounce the will and to make an election for the insane widow in a proceeding begun after the expiration of the twelve months' period, as provided in Sec. 329; (b) that the widow has dower, or a one-third interest for life, in the real estate of which her husband died seized (Secs. 306, 318); (c) that she is entitled, absolutely, to one-half the personal estate, subject to payment of the husband's debts (Sec. 325).

We are reluctant to disagree with the findings of the learned trial judge but, after a careful consideration of this new and novel question, we are forced to do so.

It follows that the judgment should be reversed and the cause remanded with directions to the trial court to enter judgment consistent with this opinion. It is so ordered. All concur.